63 So.2d 6 (1953)
222 La. 584
PLAQUEMINES PARISH SCHOOL BOARD
v.
MILLER.
No. 39943.
Supreme Court of Louisiana.
January 12, 1953.
Bloch, McCloskey & Dennery, Joseph McCloskey, Jr., New Orleans, for defendant-appellant.
L. H. Perez, Dist. Atty., Rudolph M. McBride, First Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
*7 LE BLANC, Justice.
In October, 1949, the Plaquemines Parish School Board had entered upon a project to build a modern school with cafeteria, auditorium, gymnasium and other recreational facilities for the teaching and training of children in the elementary and secondary grades, in the village of Buras, as a part of the free public school system of that Parish. In addition, the project was to include housing facilities for the teaching staff. A site was selected and it became necessary to obtain title to the properties therein included. To that end, on October 18, 1949, a proper resolution was adopted by the Board authorizing the president to acquire the lands whether by donation, purchase or expropriation proceedings and to file and prosecute the necessary suit or suits incidental thereto or, in the event title could be acquired by donation or act of sale, to sign and execute proper acts or deeds therefor.
The site selected adjoined the existing school site situated on State paved highway route No. 31 and included in it were four tracts of land belonging to four different owners which it became necessary for the school board to acquire by expropriation proceedings. Four different suits were filed by the Board and put at issue by each defendant and as the land involved in each was of more or less the same character, by agreement the suits were consolidated for the purpose of trial, and a separate judgment was rendered in each case. The need for the new school facilities, because of the inadequacy of the presently existing plant, was clearly demonstrated by the superintendent of education for the Parish and there is no doubt of the Board's asserted right of expropriation. If ever it was, that is no longer a controverted question, and the suits have now been resolved into the matter solely of the value of the lands.
The school site is plotted on a sketch drawn by John C. De Armas, Jr., Parish Engineer, according to a survey made by him. The four properties involved and which adjoin each other, all front on State Highway No. 31 and extend in a northeasterly direction towards a shell road which runs along the Mississippi River. The portions sought to be expropriated do not reach this shell road however. There are no buildings or improvements on any of them but they all have orange bearing trees which give them an added value.
After hearing testimony relating thereto, the district judge fixed a value at the rate of $375 per square acre on all the properties alike and of $7.50 per citrus or bearing tree on each, respectively, and awarded judgment in each case, accordingly. On this appeal, we are concerned only with the case of the defendant, Rene P. Miller who was awarded $1,322.25 for his land which comprised 3.526 acres and $3,825.00 for 510 orange bearing trees, as found by the trial judge.
On appeal, defendant Miller points to the following errors which he says were committed by the trial judge: (1) In fixing a fair value of only $375 per acre for the land and, as incidental thereto, failing to consider its value for sub-division purposes; (2) in limiting the value of the citrus trees at $7.50 per tree, and (3) in failing to allow compensation for what he claims is the damage caused to his remaining property.
Originally, defendant's property may be said to have fronted on the shell, or river road. It measured 192 feet or approximately one arpent front on that road and extended to the forty arpent line. He acquired it on November 9, 1922, together with the buildings and improvements on it, from Paul J. Rihner, for $2,750. It is intersected by State Highway No. 31 at a point 1,099.17 feet from the shell road on the north line and 1,137 feet on the south line. The portion being expropriated may be described as measuring 194.7 feet on Highway 31 by a depth of 783.17 feet on the north side and 817.01 feet on the south, the rear line measuring 192 feet. Thus it is seen that defendant is left with a lot of ground measuring approximately 192 feet front on the shell or river road by a depth of 316 feet on the north and 320 feet on the south line, and all of his property in the rear of State Highway No. 31, less two small lots sold by him, one in 1945 and the other in 1947.
There are no buildings or other improvements on that part of defendant's property needed for the school site and its principal *8 value, besides that as a tract of land situated where it is, lies in its adaptability to the planting and cultivating of orange and other citrus trees. Defendant contends however that because of its location in close proximity to a fast growing community, it is also adaptable to home building sites and as such could be developed into a profitable subdivision.
Whilst the fact that a piece of property may, at some time, become available for residential subdivision purposes, can be taken into consideration in fixing its market value in expropriation proceedings, it should be made to appear that there is some reasonable expectation that it might be so developed in the not too far distant future. It will not do for the owner to say that at some indefinite time it is foreseeable that this property, because it adjoins a growing town, will have an added value as a subdivision project. A situation like that presents only a possibility of such use, and in Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1, it is stated that the "possibility" that land to be expropriated might sometime be sought for a particular purpose, was too remote to be considered as an element in determining its value. Here there is no suggestion coming from the defendant that he has ever contemplated dividing any of his property into building lots and spending the money involved in such an enterprise and for the court to arrive at a value on that basis it would be necessary to indulge largely in speculation which, of course, it cannot and will not do.
Reference is made to several sales of property in the same vicinity as defendant's and it is urged on his behalf that, when used as a criterion, the prices shown to have been paid in each should afford convincing proof that his property has a greater market value than allowed by the trial judge. Some of the sales that are particularly called to the court's attention, because of the far greater value placed on them, involved improved properties as is reflected by the deeds themselves, certified copies of which were offered in evidence. One sale of unimproved property indicates a greater value than that which has been placed on defendant's; that is a sale of a lot measuring 50 by 150 feet for $1,200, made in August 1946. This lot fronts on State Highway No. 31 and is located immediately across the highway from the present school auditorium and within 100 feet of a drug store. The purchaser was the wife of a doctor and no doubt its location made the property more desirable to them than it ordinarily would have been. In relation to the location of this property, and in connection with its sale, it might be observed by contrast that a few months previously, defendant had sold a 50 by 200 foot lot from his property for $500 and two years later, sold another lot measuring 50 by 50 feet, for the same price. Both of these lots are situated some 600 feet from the school auditorium and both front on Highway No. 31, on the same side as the lot which sold in 1946 for $1,200. We don't believe, therefore, that much use can be made of all these sales as a test in establishing the value of defendant's land which has been expropriated.
In view of the paucity of direct testimony relating to the value of the land itself, the district judge, in his effort to arrive at a fair estimation, resorted to the testimony of the Secretary of the Buras Levee Board from whose records it was disclosed that in 1947, the Federal Government, through its Corps of Engineers, found it necessary to expropriate lands in the vicinity of Buras for the construction of new levees. Appraisers were sent from the Land Department and they fixed a fair market value of $250 per square acre for lands planted with orange trees. This price was the one paid to the owners of the properties, some of which were located about two miles above the Buras School site. Allowing no doubt, for the difference in location in its relation to the town of Buras, the district judge awarded the defendant in this case $125 more per square acre, a price which appears to be fair and reasonable.
The Land Department appraisers placed a value of $5 per tree on the orange trees and $3 per tree for the growing crop. Here we are not concerned with the value of the crop as it had already been harvested when the land was expropriated. Nevertheless, *9 the trial judge allowed $2.50 per tree more than the Land Department appraisal and certainly defendant should find no ground to complain on that score, especially in the absence of any other proof of the value of an orange tree. Reference is made to the testimony of Edwin Lott, district entomologist for the State Department of Agriculture who, in answer to a question, said that he would not dispute a statement attributed to a certain Mr. Miller, head of the Horticultural Research of Louisiana State University, to the effect that each tree should be valued from $50 to $75. The Mr. Miller referred to did not testify in the case however and Mr. Lott himself said that he had no idea of the value of the trees, separate from the land.
The last assignment of error by the defendant relates to the alleged failure of the trial judge to have given any consideration to the damage caused to his remaining property. His principal complaint seems to be based on the annoyance and inconvenience he says he will experience in going from his remaining property on the river front to that across Highway No. 31. He apparently apprehends that he will be deprived of an existing road which he uses for that purpose as in the new school project that road will have to be condemned. However the Parish Engineer, Mr. De Armas, testified that there was no intention to deprive the defendant and other property owners of access to the rear of their properties, indicating that some other road will be provided for them. Defendant's complaint, otherwise, is that his property will be divided into two separate tracts, but that is a situation which has existed with regard to his land ever since State Highway No. 31 was constructed completely across it and we fail to understand what greater damage, if any at all, would result in that respect from the expropriation of a part of it immediately adjoining that highway.
From a careful consideration of the record and from our appreciation of the evidence in the case we are convinced that the trial judge has placed a fair and reasonable value on the defendant's property and that the award made by him represents "just and adequate compensation" for that part of it which has been expropriated, which is what he is entitled to under the law. Article I, § 2, Constitution of 1921.
Judgment affirmed.