LANDRY, Judge.
This is an expropriation suit brought by the State of Louisiana, Through the Department of Highways, against defendants, Carlton C. Kemp, Robert C. Kemp, Gordon B. Wilson, Mrs. Thelma Wilson Gremil-lion, and Harold S. Kemp, pursuant to the provisions of LSA-R.S. 48:441 et seq., to condemn, for highway purposes, certain property belonging to said defendants and situated within the City of Baton Rouge, Louisiana.
Upon deposit by the State of the sum of $35,500.00 (the value of defendants’ property as determined by plaintiff’s ex *489 perts) into the registry of the District Court, judgment was duly signed by the judge thereof decreeing the expropriation of subject property consisting of a lot located at the corner of Florida and North Tenth Streets, Baton Rouge, Louisiana, and measuring 64 feet front on Florida Street by a depth and front of 128 feet along North Tenth Street.
After trial on the merits the learned District Judge fixed the market value of subject property in the aggregate of $43,200.00 which he itemized as $38,400.00 for the land and $4,800.00 for certain improvements situated thereon. In accordance with his said findings our brother below held that defendants were entitled to additional compensation in the amount of $7,700.00 and rendered judgment in defendants’ favor and against plaintiff for said further amount. From the judgment of the trial court awarding defendants compensation in excess of the sum of $35,-500.00 initially deposited by plaintiff into the registry of the trial court, the State of Louisiana has taken this appeal.
Defendants have answered the appeal praying that the award of the lower court be affirmed and alternatively that the decree of the trial court be amended only to the extent the total award of $43,200.00 be reallocated to the sum of $42,880.00 for the land and $500.00 for the improvements.
From the foregoing it readily appears that the sole issue presented by this appeal is the amount of compensation to be awarded defendants for the property expropriated.
In the trial court’s written reasons for judgment appearing in the record, our illustrious brother below, inter alia, made the following observations:
“This is a suit in which the State seeks to expropriate the property belonging to Doctor Robert C. Kemp and his family located on Florida Street in the City of Baton Rouge.
“On the appraisal by the appraiser acting for and on behalf of the State there was deposited in the Registry of the Court the sum of $35,500.00, which amount was arrived at by valuing the property involved at the sum of $550.-00 per front foot and $300.00 for the improvements.
“On the trial of the case there was offered the evidence on behalf of the owners of the property of Mr. Kermit Williams and, by stipulation, the evidence of Mr. John B. Pugh, both expert appraisers and realtors in the City of Baton Rouge. Mr. Williams arrived at a valuation of the property of $670.00 per front foot, or a total of $42,880.00 and a salvage value of the house of $500.00, making a total valuation of $43,500.00. It was stipulated that Mr. John B. Pugh would! value the property at $41,000.00.
“As previously stated herein, Mr. Roseman, on behalf of the State placed a value on the property of $550.00 per front foot and the salvage value of $300.00 on the house, or a total valuation of $35,500.00. On examination of Mr. Roseman the Court questioned him in regard to a value placed on the property expropriated by the State belonging to William A. Mears et ux, number 61,677 on the docket of this Court, the Mears property being situated in the same block on Florida Street at the western end thereof, which case was decided by Honorable Coleman Lindsey of this Court. Judge Lindsey arrived at a valuation of the property involved, which has the same dimensions as the land of the subject property, of $38,400.00, which is $600.00 per front foot and he awarded a value of $5,000.00 for the house, making a total of $43,400.00. The Court is familiar with all of these properties inasmuch as I have lived in the City of Baton Rouge all of my life and in my own mind I can see no difference in the valuation of the sub *490 ject property and that awarded for the Mears property. Mr. Roseman, on examination by the Court, expressed the same opinion. All of the appraisals and all of the values fixed by the courts, of necessity, must be in many instances guesses as it is impossible unless there is an actual sale to say what, in fact, a lot is worth. However, where there is no agreed sale, the method utilized by the appraisers and by the experts in arriving at a value of property being expropriated is the procedure that can be used to arrive at a fictional valuation.
“In arriving at an award to he granted in this case, I have read a copy of Judge Lindsey’s opinion in the Mears case and I have considered the testimony of the experts and, as I said, being very familiar with the subject property, I believe that a valution of the same amount is fair. However, inasmuch as the Defendants in this case in the prayer in their answer have asked for $43,200.00 and the award in the Mears case is $43,-400.00, this Court will fix the value of the land expropriated here at $38,-400.00 and of the improvements at $4800.00, making a total valuation of the land and improvements of $43,-200.00. Inasmuch as there has been deposited in the Registry of the Court the sum of $35,500.00, there is a difference to which, in may opinion, the parties, defendants herein, are entitled to of $7,700.00.”
Predicated upon the foregoing pronouncements of the trial court esteemed counsel for appellant strenuously urges that we reduce the amount of compensation awarded defendants herein from the sum of $43,200.00 allotted by the trial court to the sum of $35,500.00. More specifically, able counsel contends that in fixing the market value of defendants’ property at $43,200.00 the learned trial court erroneously substituted its own opinion as to the market value of the property expropriated instead of accepting that of the experts who testified at the trial. The State also contends the trial court erred in failing to give consideration to the testimony of all the expert witnesses who testified notwithstanding the record shows all to be equally well qualified and the testimony of each to be well grounded from the standpoint of sincerity and good reason.
Appropos the issue herein presented for determination are certain firmly established principles and rules of law. It is settled jurisprudence in this state that in an expropriation proceeding the landowner is entitled to compensation equivalent to the market value of the property condemned, market value being the price paid as between a willing and informed buyer and a willing and informed seller in the ordinary course of business. Central Louisiana Electric Co. v. Harang, La.App., 131 So. 2d 398, Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914.
Market value of property taken in expropriation- proceedings must be determined according to the best and highest use thereof provided it be established that a market for its best and highest use be shown with reasonable certainty and that its possible sale for such best and highest use be not shown to be so remote or problematical as to be speculative in nature. Central Electric Co. v. Harang, supra; Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6.
Although there are other indicia of market value the best evidence thereof is sales of similar properties commonly referred to as comparables. State of Louisiana Through Department of Highways v. McDuffie, 240 La. 378, 123 So.2d 93.
Sales to an expropriating authority made under threat of condemnation for public use may be considered in determining market value of property to be expropriated but such transfers are not controlling as comparable transactions. State of Louisi *491 ana Through Department of Highways v. McDuffie, 240 La. 378, 123 So.2d 93. We believe the foregoing principle equally applicable to those instances wherein market value is fixed by judicial decree in an expropriation suit.
When property is expropriated for highway purposes the owner who claims the value thereof exceeds the estimate of its value made by the Department of Highways and deposited in the registry of the court upon institution of the expropriation proceeding, bears the burden of proving his claim and must establish by convincing evidence that its value is greater than the appraisal of the expropriating agency. LSA-R.S. 48:453, State of Louisiana, Through Department of Highways v. Rownd, La.App., 119 So.2d 282.
In an expropriation proceeding the proof on which the judgment must rest arises from the testimony of the witnesses who testify in the case. In this regard we note with approval the following language appearing in State v. Landry, 219 La. 456, 53 So.2d 232:
“We are aware, of course, that there are several kinds of evidence which may be taken into consideration in determining the value of property which has to be condemned in an expropriation suit. Counsel for the State lists seven different kinds in their brief and they state that all except one was introduced either by plaintiff or the defendants, or both in this case. It is a fact that there is a smattering of proof by other evidence of values but the real and substantial proof on which the judgment will have to rest arises out of the testimony of the various expert witnesses on both sides. * * * ”
Equally applicable to the case at bar is the well recognized rule that where the testimony of all expert witnesses who testify in an expropriation suit appears well grounded from the standpoint of sincerity and good reason, the evidence of each should be considered and given effect. State of Louisiana Through Department of Highways v. McNeely, La.App., 130 So.2d 136; City of New Orleans v. Larroux, 203 La. 990, 14 So.2d 812.
All of the experts who testified herein agree that the best and highest use of defendants’ property is for commercial purposes. The lot in question is located near the heart of the City of Baton Rouge upon one of the main thoroughfares of that municipality. Situated upon the property is a two-story frame apartment building which the record reveals to be in a fairly good state of repair. The experts are in further agreement that to devote the property to commercial use the structure presently situated thereon of necessity must be removed and a commercial building erected in its stead.
Defendants’ expert witness, Kermit Williams, a realtor with considerable experience, appraised the property at the sum of $670.00 per front foot or $42,880.00 and the salvage value of the improvements situated thereon at the sum of $500.00 aggregating a valuation of $43,380.00 for the entire property. To arrive at the valuation of the land he used eight comparables approximately half of which fronted on Florida Street. Of these comparables two were within a very short distance of subject property. The remaining comparables used by Williams were near defendants’ property on streets adjacent to Florida Street. By making adjustments predicated upon depth tables and a time factor (which allowed for an increase of 3% in value per year over the price stipulated in the several com-parables) Williams arrived at his aforesaid valuation of $670.00 per front foot for the property at issue herein. In addition to his use of comparables he computed the value of the property from the income approach or method and in this manner arrived at an appraisal of $43,197.00 for the property as a whole.
*492 By stipulation appearing in the record the parties mutually agreed that if Mr. John B. Pugh, Realtor, were called to testify on behalf of defendants herein, he would give evidence to the effect that using the same system employed by Williams, he valued subject property in the sum of $41,000.00.
Appellant called as a witness Mr. Lowell Roseman, an expert in the field of real estate appraisals. Mr. Roseman who likewise has had many years experience as an appraiser of real estate testified that using a total of four comparables (two of which were also used by Williams and Pugh) he arrived at a valuation of $550.00 per front foot for the property in question. He considered the salvage value of the- improvements to be $300.00 and, therefore, assessed the total worth of the property at the sum of $35,500.00. Roseman’s testimony reveals that in adjusting his comparables he utilized depth tables as did Williams and Pugh but did not allow any increase in value predicated upon the time factor employed by defendants’ experts.
In view of the foregoing evidence appearing in the record we find considerable merit in the contention of learned counsel for the state that with respect to the value of the improvements situated upon defendants’ property our esteemed brother below completely rejected the opinions of the experts who testified in this case and substituted his own in place thereof. It will be recalled that defendants’ expert Williams valued the improvements at $500.00 and defendants’ other expert Pugh did not evaluate the improvements separately. Plaintiff’s expert fixed their worth at $300.00.
Assuming, arguendo, the testimony of Roseman relative to the Mears transaction (resulting from said witness’s discussion thereof under interrogation by the trial judge) was properly of record and appropriately considered by the learned trial Court, said evidence, standing alone, did not, in our opinion, justify the trial court in valuing the improvements on defendants’ property in the sum of $4800.00 notwithstanding the highest expert valuation thereof in the sum of $500.00. Granting further, solely for argument’s sake, that the Mears sale had been properly introduced in evidence herein, it would not be conclusive of the value of either subject property or the improvements situated thereon. At best, said transaction, although involving similar property situated in the same block as that of subject lot, constitutes only another comparable to be considered and weighed by the court along with all of the evidence of record herein.
While the proof in the Mears case alluded to by the Honorable trial Court may well have reflected that the improvements involved enhanced the market value of the land to the extent of $5,000.00, there is no convincing proof in the record of the instant case that the improvements on defendants’ property increases its market value more than the sum of $500.00 attested to by defendants’ expert Williams. Although it is true that in response to interrogation by the trial judge herein, Rose-man testified in substance that there was virtually no difference in the Mears property and subject property, the totality of evidence in the case at bar falls far short of proving with any degree of certainty that the improvements situated upon defendants’ lot enhances its market value to the extent of $4800.00 as found by the learned district judge. It is clear from the record that subject property could only be used for commercial purposes by removing the existing improvements. We do not have the benefit of the testimony in the Mears case and have no way of knowing whether this same condition obtained with respect to, the Mears property at the time of its condemnation. The record in the instant case (Roseman’s testimony) reveals that zoning regulations in effect prohibit the use of the upper story of defendant’s frame two-story building for certain purposes including office use because the building is situated within a fire district. The record is silent as to whether the same condition obtained with respect to the *493 Mears property. If the same restriction did not exist with respect to the Mears property it is quite conceivable that the improvements thereon may have enhanced the market value of the land $5,000.00 to a purchaser who could utilize the improvements for office space even though it happened to be a frame structure.
Considering the evidence in its entirety we conclude that our able brother below correctly fixed the market value of defendants’ property in the amount of $38,400.00. In any event, we cannot conclude that his judgment in this respect was manifestly erroneous. The amount awarded properly gave consideration and effect to the testimony of all the expert witnesses in that while the sum allotted for the land is somewhat in excess of the appraisal of plaintiff’s expert it is also somewhat less than the valuation arrived at by defendants’ appraisers. In this regard, therefore, the judgment of the trial court is eminently correct and entitled to affirmation.
We find, however, that in awarding defendants the additional sum of $4800.00 for the improvements involved, the esteemed judge of the trial court did so arbitrarily and in disregard of the expert testimony in the record. On this item the record justifies an award of only $500.00 and the judgment of the trial court will be amended accordingly.
For the reasons hereinabove set forth, it is hereby ordered, adjudged and decreed that the judgment of the trial court fixing the market value of defendants’ property at the sum of $43,200.00 be and the same is hereby amended and revised by reducing the market value of said property to the sum of $38,900.00. It is further ordered, adjudged and decreed that there be judgment in favor of defendants herein, Carlton C. Kemp, Robert C. Kemp, Gordon B. Wilson, Mrs. Thelma Wilson Gremillion, and Harold S. Kemp, and against plaintiff, the State of Louisiana, Through the Department of Highways, in the full sum of $38,900.00 with legal interest at the rate of five per cent per annum on the sum of $3,400.00, from March 4, 1958, until paid, and all costs of these proceedings; plaintiff to be given credit thereon for the sum of $35,500.00 deposited in the registry of the trial court and heretofore withdrawn by defendants.
Affirmed as amended.