152 So.2d 272 (1963)
STATE of Louisiana through the DEPARTMENT OF HIGHWAYS
v.
Edward D. RAPIER, Trustee for Lagonda Trust.
No. 5805.
Court of Appeal of Louisiana, First Circuit.
March 29, 1963.
Rehearing Denied May 3, 1963.
Certiorari Granted June 14, 1963.
*273 D. Ross Banister, Glenn S. Darsey, Brunswig Sholars and Ben C. Norgress, by Ben C. Norgress, Baton Rouge, for appellant.
Aycock, Horne, Caldwell & Coleman, by Jack C. Caldwell, Franklin, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
Plaintiff-appellant, The State of Louisiana, Through the Department of Highways, predicates its appeal herein on the alleged excessiveness of the trial court's award of compensation to defendant-appellee, Edward D. Rapier, Trustee for Lagonda Trust, for 48.468 acres of land belonging to defendant, situated in St. Mary Parish and expropriated by plaintiff-appellant for highway purposes.
Pursuant to constitutional and statutory authority, appellant deposited in the registry of the trial court the sum of $11,000.00 as compensation for defendant's property expropriated for construction of a controlled access, divided highway constituting a relocation of that portion of U. S. Highway 90 between the City of Berwick and the Wax Lake Outlet Bridge, St. Mary Parish. The lower court rendered judgment in favor of defendant landowner in the sum of $79,099.80 less the deposited sum of $11,000.00 or the amount of $68,099.80. The sole issue presented by this appeal is the alleged gross excessiveness of the trial court's award of compensation for the property taken. No question of severance damages has been presented by appellee.
The property in question is situated approximately five miles west of the twin cities of Morgan City and Berwick which lie on the east and west sides, respectively, of Berwick Bay, and approximately one mile east of the Town of Patterson, St. Mary Parish, on a comparatively narrow strip of twisting high land varying in width from one to four miles and known as the *274 Teche Ridge. The record reveals that Teche Ridge lies between the gulf marshes on the south and Six Mile Lake, Flat Lake, Lake Palourde and certain inaccessible swamps to the north. It is undisputed that lands situated on Teche Ridge have become valuable in recent years due to the scarcity of high lands in the vicinity of Morgan City and Berwick. The record reveals that for some years preceding the taking of defendant's property, high lands in the area have been very much in demand and eagerly sought after for use for industrial as well as residential subdivision purposes. In this regard it is conceded that the Morgan City-Berwick area has become highly industrialized because of revived and increased interest in certain industries such as off shore oil drilling, maritime pursuits and commercial fishing. It further appears that because of the industrial and population influx high land has been at a premium and it has become necessary to drain and reclaim swamps and marshes to fulfill the growing industrial and residential needs of the area.
The parcel of land expropriated by appellant consists of a strip 300 feet in width and several thousand feet in length running in an easterly-westerly direction and comprising a portion of a tract containing 610 acres fronting on old U. S. Highway 90. The entire 610 acre tract owned by defendant is known as Bayou Vista. More than one half of Bayou Vista, namely, the northern portion thereof, was developed by defendant into Bayou Vista Subdivision, a residential subdivision, prior to institution of the present suit. The strip expropriated by plaintiff is situated on the southern portion of the undeveloped area to the south of Bayou Vista Subdivision and is bounded on the south by the Southern Pacific Railroad right-of-way except on the east end where the expropriated right-of-way turns northerly. It is conceded that the acreage taken is comprised of two areas of slightly different character which were considered separately for purposes of valuation by the expert witnesses who appeared on behalf of the litigants. The western 9.642 acres of the expropriated strip (referred to by the appraisers and hereinafter sometimes designated by the court as "the 10 acre tract") was cleared land in cultivation in that defendant was utilizing same for the growing of sugar cane. The remaining 38.826 acres (hereinafter sometimes referred to as the "38 acre tract") was wooded. Subject property is shown to be located a distance ranging from 366 feet to approximately 2000 feet south of that portion of Bayou Vista actually subdivided and developed by defendant prior to plaintiff's filing the present action.
The record reveals that several years prior to commencement of this expropriation proceeding, defendant commenced development of Bayou Vista as a residential subdivision. Commencing at the northern portion of the 610 acre tract fronting on old U. S. Highway 90, defendant began clearing the land and subdividing portions thereof into residential building plots. Notwithstanding the relatively high elevation of defendant's land situated on Teche Ridge, it was necessary to install drainage facilities to convert the land into use for residential subdivision purposes. In this regard, the evidence is uncontradicted to the effect that drainage is a problem in this entire area due to proximity to the gulf and the relatively low and flat character of land in the general vicinity. To render Bayou Vista suitable for residential subdivision purposes, defendant constructed an elaborate system of canals and levees surrounding the entire 610 acre tract to both drain Bayou Vista from waters within as well as prevent the flow of water onto defendant's said land from adjoining properties. In addition to the system of canals and levees (which involved an expenditure of several thousand dollars) defendant constructed a pumping station adjacent to the railroad which bounds Bayou Vista on the south. The record shows that the aforesaid pumping station, consisting of three pumps having a discharge capacity of 30,000 gallons per minute each, was installed at a cost to defendant of more than $68,000.00 and was *275 considered more than adequate to drain the entire 610 acres. It is likewise undisputed that defendant was in the process of selling the entire 610 acre tract by continuously subdividing additional portions into residential homesites by clearing the land, constructing streets and installing utilities.
The principal issue presented upon this appeal is whether the learned trial judge erred in considering the best and highest use of the ten acre tract to be industrial purposes and the best and highest use of the 38 acre tract to be residential subdivision development and fixing its value on that basis. Appellant maintains that the best and highest use of the 10 acre tract is industrial purposes and that the remaining 38 acre tract is in effect swamp lands unsuitable for residential use. On the contrary, appellee contends the best and highest use of its property was as found by the trial court.
It is the settled law of this state that the compensation to be awarded in an expropriation proceeding is the market value of the property taken, market value being that price agreed upon at a voluntary sale between a willing and informed buyer and a willing and informed seller under usual, ordinary and normal circumstances. State of Louisiana Through Department of Highways v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261.
Likewise, it is established law that the true value of a landowner's property expropriated for public purposes is its market value as of the date of the expropriation proceedings in the condition in which it then stood and existed. State v. Landry, 219 La. 721, 53 So.2d 908.
Market value as the term is used in expropriation proceedings means the value of the land taken considered in the light of its best and highest use. Best and highest use means the most favorable use to which property may reasonably be put in the not too distant future. Potential residential subdivision or industrial use, to serve as the basis of establishing market value in an expropriation proceeding must be shown to be reasonably prospective, as distinguished from remotely prospective to remove such potential use or classification from the realm of guesswork, speculation and conjecture. If such potential future use is shown within the reasonably near future, the owner is entitled to compensation on the basis of such use notwithstanding the property is not being utilized for such use at the time of taking. Central Louisiana Electric Co. v. Harang, La.App., 131 So.2d 398; Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6.
In expropriation cases the landowner bears the burden of proving his claim to a legal certainty and by a preponderance of evidence. State, Through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35.
With the foregoing applicable principles of law in mind, we shall proceed to an analysis of the evidence adduced in support of the contentions of the respective parties regarding the market value of defendant's lands.
Three witnesses testified on behalf of appellant, namely: J. Louis Blouin, Arthur Fleming and State Senator Lee Firmin. Mr. Blouin appraised the 10 acre tract at $1,000.00 per acre and the 38 acre tract at $35.00 per acre. Mr. Fleming valued the 10 acre parcel at $750.00 per acre and the remaining 38 acres at $75.00 per acre. Senator Firmin estimated the worth of the 10 acre tract at $600.00 per acre and the 38 acre tract at $35.00 per acre.
Defendant produced five appraisers, namely: Ned Russo, John Edwin Kyle, Jr., Edward Rapier, Stanley M. Lemarie and Michael Hebert. Mr. Russo and Mr. Kyle appraised the entire tract at $1,250.00 and $1,800.00 per acre, respectively. Mr. Rapier valued the 10 acre tract at $3,000.00 per acre and the 38 acre plot at $2,000.00 per acre. Mr. Lemarie valued the 10 acres of industrial *276 land at $2,500.00 an acre and the 38 acre residential tract at $1,650.00 per acre. Mr. Hebert appraised the 10 acre plot at $3,000.00 per acre and the remaining 38 acres at $1,633.00 an acre.
In reaching the conclusion that the best and highest use of the 10 acre tract was industrial purposes while that of the remaining 38 acres was residential subdivision development, the learned trial judge rejected in toto the testimony of defendant's appraisers, Russo and Kyle, because of their failure to consider any difference between the 10 acre tract and the 38 acre tract, and their classification of the entire property as best suited for potential residential development.
The trial court also disregarded the appraisal of defendant's expert, Edward Rapier, because Mr. Rapier's estimates were considered excessive. In this regard the trial court's written reasons for judgment contain the following: "The court concedes Mr. Rapier is thoroughly qualified as an expert appraiser, but believes his figures are too high." In addition, our learned brother below stated:
"As I said in the other case between these same parties, the Court considers Mr. Stanley M. Lemaire the best qualified and most experienced of all the appraisers who testified. Mr. Lemaire used good comparables (best approach), personally inspected the property and gave clear and convincing testimony that his valuation of the two tracts amounted to $88,000.00. But, as defendant alleged in his supplemental answer that the market value of the property was $87,300.00, the Court reduces Lemaire's appraisal to said sum of $87,300.00.
"The Court also considers Mr. Michel Hebert to be well qualified for appraising this particular property. His valuation, using comparables, amount to $70,899.61.
"`The testimony of each expert should be given effect if that testimony is well reasoned and sincere.' State [Through Department of Highways] v. Boyer, 1961, [La.]App., 130 So.2d 738, 744."
Mr. Blouin, testifying on behalf of appellant, stated he first saw subject property in September, 1958, and again on May 16, 1961, the day before trial of this matter. His inspection, conducted from the railroad right of way which bounds the expropriated property on the south, revealed the land to be inundated from which he concluded the property to be swampland. He noted that the 38 acre tract was covered with trees consisting of cypress, willow, dogwood and some oaks with considerable undergrowth of palmetto. Blouin considered the 38 acre tract to have no economic use. In appraising the 38 acre tract he was unable to find comparable sales of swamp land in which minerals were reserved to the owner (it being conceded appellant permitted appellee herein to reserve all mineral rights to subject property), therefore, Blouin compared prices paid for certain utility rights-of-way for properties situated east of Houma, Terrebonne Parish, on similar property as well as some canal rights-of-way. None of the so-called comparables relied upon by Blouin were introduced in evidence or identified with any degree of certainty. On the foregoing basis, Mr. Blouin considered the value of the 38 acre tract to be $35.00 per acre.
Regarding the 10 acre tract, Mr. Blouin considered its best and highest use to be a continuation of the development of the nearby existing Bayou Vista Subdivision. He also considered that its use for residential development exceeded its value for industrial purposes. He distinguished the 10 acre tract from property immediately to the west thereof, which latter property he considered industrial, because the adjacent property abutted land previously sold by defendant to Cameron Iron Works and devoted by that concern to light industrial *277 use whereas the 10 acre tract in question merely touches the property of Cameron Iron Works on a corner. In addition, Blouin considered that the property lying to the west of the 10 acre tract was more accessible to present U. S. Highway 90 because it could be reached without passing through a developed subdivision whereas the 10 acres in question could obtain access to the existing highway only by passing through the developed portion of Bayou Vista Subdivision to the north. In computing the value of the 10 acre tract, Blouin considered its value as developed property would be $5,000.00 per acre. Deducting therefrom an estimated development cost of $2250.00 per acre and a percentage for reduction in residential value resulting from its proximity to the railroad, he concluded the market value of said 10 acres to be $1,000.00 per acre. Blouin's inspection revealed the presence of canals, levees and the pumping station but he was not aware they affected the drainage of subject property.
Mr. Fleming, a real estate appraiser and manager of a savings and loan association, testifying on behalf of appellant, stated that in appraising subject property he considered the following comparables:
(1) A sale of 10.56 acres for approximately $3000 an acre from Lagonda to Cameron Iron Works, adjacent to the subject property, which he distinguished on the basis that the Cameron Iron Works property fronted on old U. S. Highway 90 and had access to it for a considerable distance.
(2) The sale of a residential lot in downtown Patterson on February 1, 1958, for $1000, converted by computation to $3300 per acre.
(3) The sale on July 7, 1955, of 42 acres five miles from Thibodeaux near St. Nicholas College on the Bayou Lafourche road to Raceland for $236 per acre. He considered this property similar to the expropriated property. He noted that since the property was sold it has been subdivided and developed with shell streets.
(4) A sale on February 8, 1957, of 35 acres, two miles from Thibodeaux on the East side of Bayou Lafourche, at a price of $431.42 per acre.
(5) A sale of 67 acres on the right or West bank of Bayou Lafourche for $317.56 per acre, dated May 25, 1953.
(6) A sale of 50.02 acres for $50,000 of property East of Morgan City on Highway 90 backing up to Lake Palourde.
Predicated upon a United States Department of Agriculture Soil Survey map, reflecting a survey made from 1948-1952, a copy of which was introduced herein, Fleming considered subject property to be swamp land. Fleming deduced that the best and highest use of the 10 acre tract was for residential development whereas he deemed the 38 acre parcel suitable for agricultural purposes provided it were cleared and properly drained. In addition, Fleming stated that he knew of no property in St. Mary Parish sold for residential subdivision purposes within the past 10 years for as little as $750.00 per acre, although he was cognizant of one sale for $1,000.00 per acre for such purpose and another for $2,000.00 per acre for subdivision development.
Ned Russo, whose business is that of insurance agent and realtor, appraised the entire property taken at the sum of $1,250.00 predicated upon sales of lots by defendant in the then existing Bayou Vista Subdivision. Although his appraisal was made on the day of the trial, it was founded upon sales by defendant prior to institution of suit by plaintiff on November 17, 1959. Mr. Russo was aware of the drainage facilities installed by defendant and considered the property well drained. In arriving at his estimate of value, he also took into consideration the cost of clearing the wooded area. His testimony likewise reveals that the practice of constructing protection levees, providing drainage canals and installing pumping facilities in order to convert lands for residential subdivision *278 purposes is not at all unusual in the Morgan City-Berwick area.
Testifying on behalf of defendant, Mr. John Edwin Kyle, Jr. stated that he is Vice-President and general manager of Kyle-Taylor Lumber Company, secretary and treasurer of Lawrence Construction Co., and secretary and treasurer of Precision Excavators, both of which latter corporations engage in the business of developing residential subdivisions. He related the history of the development of Golden Farms Subdivision, a residential development near the outskirts of Berwick. It appears that a company organized by Kyle purchased a 40 acre tract of land which he described as "anywhere from damp to a foot and a half of water on it" for a price of $1500.00 per acre. The installation of a pump and other drainage facilities at a cost of $12,000.00 made possible the sale of lots aggregating a gross return in excess of $500,000.00. According to Kyle, Golden Farms Subdivision and Bayou Vista Subdivision are the only two subdivisions constructed in recent years west of the Atchafalaya River and east of Patterson, Louisiana. Kyle stated further that the facilities installed by defendant to drain Bayou Vista were adequate to permit residential development of subject property in its entirety.
Defendant called as its expert witness Mr. Stanley M. Lemarie, senior partner in the real estate firm of Leo Fellman & Company of New Orleans, Louisiana. Mr. Lemarie, who possesses a most impressive record of qualifications and experience in the field of real estate and realty appraisals, testified that, in his opinion, the best and highest use of the 10 acre tract was for light industrial and commercial purposes. His determination in this regard was based upon the proximity of the 10 acre parcel to the property of Cameron Iron Works to the west and also because the said 10 acre tract was separated by a railroad spur from another tract also classed as industrial property. Mr. Lemarie considered the 38 acre tract best suited for residential subdivision development and determined its raw acreage value by comparison with the sales of several subdivision tracts in the general vicinity, including Bayou Vista and also upon consideration of the cost of developing land in the area. He examined subject property and its drainage system and observed the pumps in operation. At the time of his examination of the property he discerned no standing water.
Mr. Michael Hebert, of Franklin, Louisiana, whose business is that of insurance and real estate, appeared on behalf of defendant and appraised the 10 acre tract separately from the remaining 38 acres although in his opinion the best and highest use of the entire property taken was for residential subdivision development. In evaluating the 10 acre parcel, Mr. Hebert computed the developed acreage value to be $3795.00 per acre from which he deducted development costs in the aggregate of $787.00 per acre in which manner he arrived at a net value of $3008.00 per acre. Regarding the 38 acre tract he determined the developed value to be $2970.00 per acre, less development cost in the sum of $1337.00 per acre, leaving a net valuation of $1633.00 per acre. In determining developed acreage values, he considered the market value of lots in the vicinity and adjusted for expected profit and other value influencing factors such as the relative position of the property with regard to the highway and the railroad. Mr. Hebert stated that he inspected the property in April, 1960 and January, 1961, and on both occasions found the land to be dry and well drained.
Mr. Edward Rapier, Trustee for Lagonda Trust, defendant herein, testified that as part of a long range plan conceived in 1955 or early 1956, a pumping station with a capacity to accommodate three pumps was constructed and completed in 1957. As part of the owners' over-all plan for development of Bayou Vista the property was leveed off from adjoining lands on the east to prevent water from flowing from said adjoining properties onto the drained lands of defendant. As a further part of the development plan, an existing canal running *279 along the north side of the railroad was cleaned to facilitate the flow of water therein. Subsequently, lateral drains were dug by hand and existing levees cut to provide outlets to other canals dug by defendant. The purpose of said facilities was to drain the property to render it suitable for residential purposes as a continuation and extention of the existing subdivision. The entire plan is shown to have been conceived and virtually completed before defendant had any knowledge of the proposed highway relocation which gave rise to the instant suit. Mr. Rapier conceded that since lateral drains had not been dug and streets had not yet been laid out in the area adjacent to the railroad it was possible that there might be some water standing on the property particularly in the wooded portion thereof.
Mr. Theodore F. Kramer, Civil Engineer and surveyor, of Franklin, Louisiana, testified that he is head of a consulting engineering firm which planned and supervised the development of defendant's property including the Bayou Vista Subdivision roads and the extensive drainage system hereinbefore explained. He stated that the portion of Bayou Vista Subdivision property between old Highway 90 and the railroad comprised approximately 610 acres, under levee and drained by a system of five canals, the total system being capable of draining an area of 2000 acres or three times the required capacity. All canals incident to the system were constructed at defendant's expense. He confirmed that the pumping station consisted of three 42 inch cascade pumps with discharge capacity of 36 inches each and each being powered by a 128 horsepower engine operating at 1300 rpm. He likewise corroborated the discharge capacity of each pump to be 30,000 gallons per minute. According to Kramer, the pumping facility is capable of draining the water from a six-inch rain per acre falling within a period of 24 hours. The system was additionally designed, intended and capable of draining an additional 200 acres of land belonging to defendant and situated on the south side of the railroad which said 200 acres defendant intends to develop at a future date.
It is the settled jurisprudence of this state that in cases involving expropriation of lands for public purposes, the opinion evidence of expert witnesses regarding the value of the land involved should be given effect when it appears to be well grounded from the standpoints of sincerity and good reasoning. Domino v. Domino, 233 La. 1014, 99 So.2d 328; Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541. It is likewise the law of this state that opinions of expert witnesses regarding the value of property expropriated for public use are not acceptable and will not be considered when not well grounded. Town of Slaughter v. Appleby, 235 La. 324, 103 So.2d 461.
From the foregoing analysis of the testimony of the witnesses, it is apparent that appellant's witnesses, in classifying the 38 acre tract as swamp land, utterly failed to take into consideration the elaborate drainage and levee system installed by defendant to drain and protect subject property from overflow. In this regard Blouin's testimony shows that he observed the pumping station and the canal adjacent to the railroad but did not consider that such facilities were part of a system intended to drain defendant's property. Mr. Fleming's testimony is to the effect that he did not even observe the pumping station. Upon cross examination by counsel for appellee, however, Blouin conceded that if the 38 acre tract were in fact drained that it would have potential subdivision value whereas Fleming conceded the land, if drained and cleared, would be best suited for agricultural pursuits.
By stipulation appellant's third appraiser, Senator Lee C. Firmin, valued the 10 acre tract at $600.00 per acre and the 38 acre tract at $35.00 per acre. Obviously his valuation failed to consider the property to be adequately drained and protected by levees.
*280 In view of appellant's witnesses overlooking the salient fact that subject property lay within an elaborate and expensive protective and drainage system designed, installed and constructed entirely at the expense of its owners with the view of developing subject property for sale as a residential subdivision we believe the trial court properly rejected their testimony. Full inquiry and diligent inspection and examination would have revealed that the property in question had been and was being developed for residential purposes in accordance with carefully laid plans which commenced and were undertaken prior to the present expropriation and were in no way related thereto or affected thereby. We are not here concerned with the mere possibility of converting raw acreage into a residential subdivision at some future, undetermined date so remote, uncertain and removed as to make such use of the property purely speculative and conjectural. The evidence in the case at bar clearly reveals that for several years prior to the present taking, defendant had embarked upon a provisional plan and project designed to convert its property into residential subdivision plots. At the time of the present taking more than one-half of the entire 610 acre tract had been so developed and improved. As herein previously stated, a portion of the property herein taken, lay within 400 feet of other portions of defendant's property already subdivided and converted into residential sites. The development with which we are herein concerned was conceived and the execution thereof commenced prior to the instant taking. The record reflects that the best and highest use of the 10 acre tract is light industrial and that of the 38 acre tract is residential subdivision adaptability. It further appears that such potential use of subject property is so immediately prospective and shown with sufficient certainty as to remove such potential use from the realm of conjecture, speculation or mere possibility. It follows, therefore, that defendant landowner is entitled to compensation predicated upon the best and highest use of its said property as hereinabove determined. Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6.
Disregarding the testimony of defendant's witness, Rapier, (as our learned brother below did), it appears there is little difference in opinion among the remaining experts regarding the value of the property in question. Mr. Kyle, however, predicated his estimation of value on what he would be willing to pay for the propertya totally unacceptable criterion. Mr. Russo did not fully explain the manner in which he arrived at his appraisal. For these reasons our learned brother below disregarded the testimony of these witnesses and in so doing, he was eminently correct. Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654; Domino v. Domino, 233 La. 1014, 99 So.2d 328.
Our careful consideration of the record convinces us the learned trial court has painstakingly and correctly analyzed the evidence adduced herein. Admittedly the compensation awarded defendant herein represents a vast and unprecedented increase in the amount deposited by plaintiff incident to an expropriation proceeding instituted pursuant to the constitutional and statutory provisions which authorize actions of the present nature. The record in the present case, however, establishes that the comparatively negligible valuations placed upon subject property by plaintiff's appraisers resulted from their failure to realize and discover that the property in question lay within an area which had been developed to the point that it was properly and adequately drained and protected from overflow thereby rendering it suitable, adaptable and desirable for residential subdivision development.
In arriving at a valuation of $79,099.80, our esteemed brother below reduced Mr. Lemarie's appraisal from $88,000.00 to the sum of $87,300.00 (the amount prayed for by defendant in answer to plaintiff's petition for expropriation). Using the aforesaid reduced figure he added it to Hebert's *281 appraisal of $70,899.61, divided by two the sum thus produced and accepted the resulting figure as the value of defendant's property. The record in the present case is abundantly clear that in establishing the value of defendant's property, our able brother below did not resort to averaging appraisals merely as a matter of convenience and expediency. On the contrary, it clearly appears that the learned trial court meticulously and carefully considered the testimony of each and every appraiser who testified herein. After determining which testimony he would consider and which he elected to reject, he correctly concluded the testimony of Lemarie and Hebert to be reasonable and well founded and on this basis accepted their appraisals of the property involved. In so doing, he gave due and proper consideration to the testimony of all witnesses and particularly those upon whose testimony he relied in reaching his ultimate conclusion.
For the reasons hereinabove set forth, the judgment of the trial court is affirmed.
Affirmed.