200 So.2d 97 (1967)
STATE of Louisiana Through the DEPARTMENT OF HIGHWAYS
v.
Leroy TALBOT.
No. 7069.
Court of Appeal of Louisiana, First Circuit.
May 29, 1967.
Rehearing Denied June 30, 1967.
*98 Ben C. Norgress, William W. Irwin, Jr., Philip K. Jones, D. Ross Banister and Glenn S. Darsey, Baton Rouge, for appellant.
Risley C. Triche, of Triche & Sternfels, Napoleonville, for appellee.
Before LANDRY, ELLIS and BAILES, JJ.
LANDRY, Judge.
In this expropriation proceeding plaintiff, State of Louisiana, Through the Department of Highways (Department), appeals the judgment of the trial court awarding defendant Leroy Talbot (owner) an increase in market value of land taken for highway purposes from the sum of $2,464.00, deposited by the Department to the aggregate of $4,328.00, together with severance damages *99 in the sum of $5,990.00. Appellant maintains its initial deposit represents the fair market value of the land taken and no severance damages whatsoever are due appellee. We find appellant's contentions well taken and that the amount awarded owner as compensation by the trial court must be reduced to the amount of the Department's original deposit.
The increase ordered by the trial court in the market value of the land taken resulted from its finding the best and highest use of subject property to be for the growing of sugar cane as opposed to the Department's contention best and highest use was for the raising and grazing of cattle. The lower court's award of severance damages was predicated on the determination that the proposed highway divided defendant's property (a 160 acre parcel) into two tracts of 111.08 and 36.6 acres, respectively, thereby reducing the value of the smaller tract for agricultural purposes, and that the remaining tracts were rendered vulnerable to flooding.
The issues thus presented are purely factual but must be resolved in the light of the well established legal principles hereinafter set forth.
We believe a fair analysis of pertinent background information appearing of record to be that subject property is located approximately two miles from the municipality known as Labadieville, situated in Assumption Parish. The immediate area consists mostly of wooded and swampy lands, the open or partially cleared portions of which are generally devoted to cattle raising and grazing. It is undisputed that no improved road or highway led to subject property at the time of taking. Prior to the expropriation, defendant gained access to his property by means of a private dirt road traversing the lands of Dr. Mire, an adjoining owner, and connecting with either a state or parish highway. There is some testimony in the record that a right of way was available for a public road leading to defendant's property but that the servitude, though usable, was undeveloped. Defendant concedes he used the dirt road traversing the Mire property as it provided the most convenient ingress to and egress from his property. Besides owning the 160 acres in question, defendant held a lease on considerable adjoining acreage, including at least a portion of the Mire estate, all of which he used as a single unit on which to raise and graze cattle. In connection with his cattle operations, defendant had constructed some fencing in the wooded area in the southwest portion of subject property.
Defendant purchased subject property in 1959 for the sum of $6,000.00, a unit price of $37.50 per acre. Appellant filed this expropriation proceeding January 7, 1964. In the interim between purchase and expropriation, defendant dug a well on what is now the remaining larger tract, constructed cattle pens on the property and extended his fences. At the time of expropriation, the property was being used solely and exclusively for cattle raising and grazing.
The area actually expropriated embraces 12.32 acres consisting of a strip 120 feet in width commencing at approximately the northeast corner of subject property and running southwesterly until it flares to a width of 320 feet near the southwest corner of the tract in which vicinity it exits from defendant's lands. The roadway traverses subject property in such fashion as to leave 111.1 acres on the southeast side of the proposed highway and 36.6 acres on the northwesterly side thereof. All buildings and improvements erected by owner in connection with his cattle raising operations are situated on the remaining 111.1 acre tract.
Defendant testified subject property consisted of approximately 80 acres of cleared land being used for pasture, some 20 or 30 acres of uncleared lowland and the remainder in swamp. He testified further he has been in the sugar cane harvesting business his entire lifetime. He contended it *100 was his intention to convert the property into sugar cane land, although he acknowledged he had not attempted to raise sugar cane on the land at any time prior to the date of trial. Pictures taken by defendant shortly before trial and appearing of record show some water standing on the property adjacent to the partially erected roadbed constructed by appellant. Defendant stated this condition did not exist prior to construction of the roadbed and maintained the structure intercepted drainage of subject property.
Mr. E. J. Lousteau, County Agent, Assumption Parish, appearing on behalf of appellee, qualified as an expert in the field of agriculture, deposed that in 1963 he inspected subject property at defendant's request that he evaluate the land for pasture purposes. The witness found the land in the open area to be fine sandy and sandy loam content predicated upon approximately 10 samples which he personally took and assayed. Expressing familiarity with lands in the general area, Mr. Lousteau was of the opinion all lands in the vicinity were suitable for the growing of sugar cane provided adequate draining was possible. He expressed no opinion regarding the possibility of draining the property and testified that whereas defendant casually mentioned the possibility of raising sugar cane on the land, defendant's then present intention was to use the property for cattle grazing only. Queried about the use of the land for growing sugar cane, Lousteau replied that when he examined the property, it was in a "raw" state. He further explained that to convert the land to sugar cane would entail clearing the wooded areas, crowning the land and providing means for proper drainage. He was of the opinion that to convert the property to sugar cane would entail an expenditure of approximately $125.00 per acre.
Mr. Leonard Guedry, Insurance Agent and Realtor, testifying as defendant's witness, averred that approximately 90% of his time is devoted to his insurance business. In essence Mr. Guedry considered the best and highest use of subject property to be that of growing row crops. Based on other sales of property in the general area which he considered comparable to defendant's lands, Mr. Guedry determined the market value of appellee's property to be $350.00 an acre. He fixed severance damages in the sum of $3,885.00 based on the loss of use of an estimated five acres for the construction of extra headlands required by the division of the property; the remainder of the severance damages being represented by inconvenience to be experienced by defendant in crossing the new highway with his farming equipment.
Mr. Kermit Williams, realtor, Baton Rouge, appearing on behalf of owner, conceded he did not see subject property prior to the taking. His first visit to the land was after partial completion of the roadbed shortly before trial. He acknowledged his appraisal was based on his own investigation of sales of similar properties, consideration of the evidence of certain other witnesses who previously testified herein, and knowledge imparted by owner. Of the 12.32 acres taken, Mr. Williams found 10 acres were high land and approximately 2 acres swamp. Based upon the mentioned sources of information, his own inspection prior to testifying and three sales of comparables within a 3 mile radius of subject property, Mr. Williams ascribed a market value to subject lands in the amount of $400.00 per acre. He determined the best and highest use for the property to be the production of sugar cane and was in general agreement with the testimony of Mr. Lousteau. According to Williams, the cost of preparation for sugar cane production would be $100.00 per acre and on this basis, he valued 58 acres of high, dry land at $300.00 an acre. To the swamp land he assigned a value of $100.00 per acre. Mr. Williams found, however, that of the 12.32 acres taken, 10.32 acres were high land which needed no improvement for sugar cane growing and consequently fixed the value thereof at $400.00 per acre. The remaining *101 two acres taken being in swamp, he fixed its value at $100.00 per acre thus arriving at a total value for land taken in the sum of $4,328.00. On the finding that the remaining 36.6 acre tract would be damaged 50% by the taking, Mr. Williams fixed severance damages in the sum of $5,990.00, thus, in his opinion, entitling owner to an aggregate award of $10,318.00.
Appellant produced Mr. J. Louis Blouin who qualified as an expert appraiser. His inspection prior to taking revealed the property was then being used for cattle grazing and that it was marginal land, typical of the area with a little ridge through it with swamp on either side. Blouin found no evidence of cultivation but did note a fence running through the woods on the southwest side and another fence along the adjoining property of Dr. Mire. He found sales of similar property in the vicinity non-existent except for defendant's purchase in 1959, and the transfer of a tract adjacent to subject property effected February 5, 1961, for the price of $1,000.00 for the 51 acres conveyed. Adjusting the evaluations to compensate for the steady increase in values during the intervening three or four year period, he fixed the value of defendant's property as of the time of taking at $200.00 per acre. Blouin found no comparable sales because most of the tracts in the vicinity fronted on Bayou Lafourche and the improved road parallel thereto and consisted of homesites forming part of farms composed of high sandy land in cultivation for sugar cane or row crops. Based on his own experience as a grower of sugar cane, he considered it economically unfeasible to use subject property for sugar cane growing because even the open land would require expenditure of $100.00 per acre to properly prepare it for sugar cane. The wooded land, which would require destumping, he estimated would cost $300.00 to $400.00 to suitably prepare for farming. As for the swampy areas, no portion thereof could be used for sugar cane growing. In Blouin's opinion, the best and highest use for the land was cattle raising and grazing. He considered that no special problems would be presented in the continued use of the separate tracts for cattle grazing and therefore found no severance damages due. On the contrary, he found the former lack of accessibility would be cured by construction of the highway and defendant's land would benefit therefrom and enhance in value as a result thereof.
While defendant maintained (and introduced pictures to support his testimony) that the land was rendered amenable to flooding after construction of the roadbed, Mr. W. H. Biggs, Senior Project Engineer in the employ of the Department, testified he was in charge of this particular project. He stated in essence that the area adjacent to the roadway on each side is low swamp and would not drain before the taking. He further testified that revised plans provided for culverts to be placed beneath the roadway at the two lowest points thus allowing as good drainage as existed prior to the taking.
Dr. Charles C. Cain, agronomist, agricultural consultant and professor of agriculture at the University of Southwestern Louisiana, Lafayette, Louisiana, testifying on behalf of appellant, is shown to have an impressive background and numerous degrees in the field of agronomy, the study of crops and soils. He examined subject property first in July, 1965 and again in August, 1965, on which latter occasion he took approximately 30 or 40 soil borings to evaluate all types of lands found in the tract. As a result, he found the higher land consisted largely of a type known as "Baldwin-Cypremort", Cypremort being particularly well drained land and Baldwin being moderately well drained. He noted that together these soils are associated with and regarded as high land and have virtually the same production capacity. The lower lying lands he found to consist principally of "Sharkey Clay" and "Sharkey-Alligator" or "Alligator Clay", which he described as poorly drained land of the type commonly known as "gumbo." Dr. Cain found 45 *102 acres of the tract consisted of Cypremort-Baldwin soil and the remaining 115 acres of Sharkey-Alligator Clay. Of the lands taken, 2.5 acres were of the Cypremort-Baldwin type and the remaining 10 acres were composed of Sharkey-Alligator Clay. The Sharkey-Alligator Clay soil Dr. Cain considered marginally suited for sugar cane because, being marginal, it had a low per acre profit potential and would require considerably more expense to prepare, at least insofar as drainage was concerned. To place the land in readiness for sugar cane, it was Dr. Cain's opinion it would have to be first stumped and grubbed. Then it would have to be leveed to prevent inundation from adjoining properties and provided with a pumping system to drain it of rainfall. Additionally, the land would have to be crowned. In short, Dr. Cain believed the cost of all necessary work to convert the land to sugar cane was prohibitive and the yield to be expected from such soil would not make cane farming thereon very profitable.
The compensation due a landowner whose property is expropriated for public purposes is the market value of the land at the time of taking. Market value is the fair value or price to be paid and accepted between a willing buyer and seller under ordinary and usual circumstances. Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260.
Market value of property expropriated for public purposes must be determined in the light of the best and highest use to which the property may reasonably be put. To constitute best and highest use for a particular purpose, it must be made to appear that there is reasonable expectation the property may be so used, employed or developed in the not too distant future. Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6.
The rule for determining whether a prospective, contemplated or intended use of property may be considered its best and highest use for determining market value in an expropriation proceeding is set forth in Plaquemines Parish School Board v. Miller, supra, as follows:
"Whilst the fact that a piece of property may, at some time, become available for residential subdivision purposes, can be taken into consideration in fixing its market value in expropriation proceedings, it should be made to appear that there is some reasonable expectation that it might be so developed in the not too far distant future. It will not do for the owner to say that at some indefinite time it is foreseeable that this property, because it adjoins a growing town, will have an added value as a subdivision project. A situation like that presents only a possibility of such use, and in Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1, it is stated that the `possibility' that land to be expropriated might sometime be sought for a particular purpose, was too remote to be considered as an element in determining its value. Here there is no suggestion coming from the defendant that he has ever contemplated dividing any of his property into building lots and spending the money involved in such an enterprise and for the court to arrive at a value on that basis it would be necessary to indulge largely in speculation which, of course, it cannot and will not do."
In employing the same rule, we noted as follows in Central Louisiana Electric Co. v. Harang, La.App., 131 So.2d 398:
"It is common knowledge that any tract of land wheresoever situated may be physically divided into residential plots or lots and subdivided irrespective of the demand for such property. However, potential subdivision use, to serve as the basis for establishing market value in an expropriation proceeding, must be shown to be reasonably prospective, as distinguished from remotely prospective, so as to remove said potential use or *103 classification from the realm of guesswork, speculation and conjecture. If such potential future use is shown within the reasonably near future the owner is entitled to compensation on the basis of best and highest use for subdivision purposes even though the property affected be not in use for such purpose at the time of taking. However, if the potential (as, indeed, there is a potential in every case no matter how remote) is so indefinite or remote as to be predicated solely upon speculation and conjecture, it may not serve as the criteria of market value.
Thus it has been held in Plaquemines Parish School Board v. Miller, supra, that while the fact that a piece of property may at some time become valuable for residential subdivision purposes may be taken into consideration in determining its market value in expropriation proceedings, to classify its best and highest use as subdivision purposes, it should be made to appear that there is logical expectation it may be so developed in the reasonably near future. It was therein further held that the mere possibility of future subdivision use is too speculative."
Considering the evidence of record, we are convinced of the correctness of appellant's contention that best and highest use of subject property has been shown to be that of cattle raising and grazing and that its use for sugar cane production is speculative and conjectural. While it may be argued from the record that subject property might conceivably be used for the production of sugar cane at some future date, the evidence does not support the conclusion such might occur in the reasonably near future. Although it may not logically be argued it is impossible to produce sugar cane on defendant's land, it does appear that such use is unlikely in view of the nature of the soil and the cost of preparing the land for the growing of agricultural crops. The economics involved militate against the use of the land for the growing of sugar cane within the reasonably foreseeable future. It is significant, we think, that as of the date of trial defendant had made no effort to raise sugar cane or any crop on the subject property. All improvements made by defendant were to better his cattle operations only.
Regarding the question of severance damages, it is well settled that such damages are due the landowner when the taking results in a diminution in value of his remaining property. Severance damages are measured by the difference between the market value of the owner's remaining property for sale or rental purposes immediately before and immediately after the expropriation. American Telephone and Telegraph Co. of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4.
In the light of the foregoing rule, we find the trial court incorrectly awarded defendant severance damages herein. Since the best and highest use has been found to be that of cattle raising and grazing instead of agricultural purposes, we find no merit in the contention of defendant's expert, Williams, that loss of some five acres would result because of the necessity of constructing excessive headlands. For the same reason, defendant will experience no inconvenience in crossing the highway with agricultural equipment to get from either remaining tract to the other.
We likewise find no severance damages due because of the alleged interception of drainage facilities by the proposed roadbed. The testimony of Mr. Biggs makes it abundantly clear the Department has revised its initial plans to include drainage facilities which will provide drainage as good as existed prior to the taking. While the photographs introduced by defendant do indeed show some water standing on either side of the roadbed, it also appears these photographs were taken before installation of the drainage facilities which the Department has ordered installed.
*104 Our finding that no severance damages are due owner obviates the necessity of considering appellant's alternative contention that such damages should be offset by special benefits accruing to subject property from the construction proposed.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended and revised to reduce the compensation due owner, Leroy Talbot, for the expropriation of subject property, from the sum of $9,818.00 to the sum of $2,464.00, the initial deposit by appellant, The State of Louisiana, Through the Department of Highways, with no interest due thereon; all costs of these proceedings, both in the trial court and on appeal, to be paid by appellee, Leroy Talbot.
Amended and rendered.