SARTAIN, Judge.
Plaintiff seeks by expropriation a servitude of 170 feet in width across the lands of defendant and appeals from a judgment of the district court contending that said judgment is excessive. Defendant has answered the appeal urging that the judgment of the district court is inadequate and asks that the same be increased.
Defendant corporation is the owner of a very large tract of land containing some 4700 acres and comprising two very contiguous tracts of land known and referred to as the St. Louis and Centennial Plantations. The servitude herein sought will traverse the Centennial Plantation.
The Centennial Plantation comprising some 500 acres has a frontage of 700 feet on Bayou Plaquemine (formerly the Intra-coastal Canal). This tract of land fans back some 9600 feet and measures approximately 3450 feet across the rear where it joins the St. Louis Plantation. The said St. Louis Plantation contains some 4200 acres and has a frontage of 4200 feet on the west bank of the Mississippi River. The servitude as sought will commence at a point on the western boundary of the Centennial Plantation 4750 feet south of Bayou Plaquemine and then proceed on the diagonal a distance of 6700 feet to the rear of said Centennial Plantation, and then continue in a straight line on the St. Louis Plantation a distance of 2800 feet and then turn in an easterly direction and continue for an additional distance of 4100 feet. The entire servitude will take 33.76 acres of sugar cane lands and 21.61 acres of wooded lands for a total of 55.399 acres. The total distance is 14,338.51 lineal feet or a little over 21/4 miles.
Defendant’s property may be generally described as a “fat V” with its frontages on Bayou Plaquemine and the Mississippi River being equally distanced from the City of Plaquemine of approximately one mile.
The St. Louis Plantation portion of defendant’s property is traversed by Louisiana *31 Highway 1, the main line of Texas & Pacific Railroad, pipelines of Humble Oil & Refining and Texas Eastern Gas Transmission. Paralleling the two pipelines is an existing servitude of plaintiff. Along State Highway 1 is the Sugar Bowl Gas Line. These servitudes do not cross or bisect the lands of defendant referred to as the St. Louis Plantation.
On the Centennial Plantation property there is contained a plantation road which starts at a point on Bayou Plaquemine and proceeds on the perpendicular almost the length of the said plantation. Louisiana State Highway 75, on a servitude of approximately 80 feet, is hard surfaced and crosses said Centennial Plantation on a line generally parallel to Bayou Plaquemine but at a distance of 3000 feet from said Bayou.
Both plantations are traversed by several other plantation roads and drainage canals identified as measuring 40 to 45 feet in width. The two plantations comprise a very highly developed agricultural complex, with numerous highways, canals, bridges, and servitudes.
With the above general description of the properties in view we look to the issues presented herein which are twofold, namely: (1) the highest and best use of the property taken and the value therefore, and (2) the amount, if any, of severance damages owed to defendant as a result of the taking for and the installation of a high voltage electric transmission line.
HIGHEST AND BEST USE
The trial judge determined that the highest and best use of the property herein affected was for industrial purposes and with this conclusion we are in complete accord.
Plaintiff’s witness urged that the highest and best use of defendant’s property was in accord with its present use and that is agricultural. Said witness offered numerous transactions involving properties of an agricultural nature and submitted as com-parables these transactions in their determination as to value. Plaintiff’s principle witness was Mr. Max J. Derbes, Sr., who determined that defendant’s land under cultivation was valued at $300 per acre and the wooded acreage was valued at $200 per acre. He concluded that defendant was entitled to 50% of 33.76 acres of sugar cane land at $300 per acre or $10,128; 100% of 19.91 acres of wood lands at $200, or $3,982; and, 100% of 1.73 acres of wood lands at $200 per acre, or $346. His total value was $14,456. He assessed no severance damages. It was stipulated that plaintiff’s other witness, Mr. Chester A. Driggers, if called to testify would do so in substantial accordance with that of Mr. Derbes’ testimony.
Defendant’s principle witness was Mr. Kermit A. Williams, who opined that the highest and best use of defendant’s land was for industrial purposes and he used some 14 property transactions as comparables in support of his position. He relied primarily on 5 sales of large tracts of land, 3 on the east bank of the Mississippi Riveir (Baton Rouge side) and 2 on the west side (Plaque-mine) of the Mississippi River. These tracts of land ranged from $850 to $1650 per acre. He determined that the value of defendant’s property was $1300 per acre. He further determined that defendant was entitled to considerable severance damages which we will discuss hereinafter.
It was stipulated that if Mr. W. D. Mc-Cants, a competent appraiser, was called by defendant his testimony would be substantially the same as that of Mr. Williams. Mr. McCants’ comparables and the computations based thereon were placed in the record.
Two of the 5 comparables relied on by Mr. Williams are listed as items 2 and 3 of that opinion rendered this day by us in Louisiana Power & Light Co. v. Ristroph, 200 So.2d 14, and will not be repeated here. Both of these referred to compara-bles involve property situated on the west side of the Mississippi River. The third *32 comparable used herein by Mr. Williams and also located on the west side of the Mississippi River is a sale from Riverside to First Mississippi Corporation, dated April 20, 1965 of 1,000 acres at a price of $1,000 per acre. The remaining 2 sales pertain to property located on the east side of the Mississippi River. They are Orange Grove to Enjay Company, dated June 10, 1966, covering 1,000 acres to $1,785 per acre; and, Carville to Brazeale, dated June 20, 1966, of 794 acres at $1,650 per acre. The testimony equating all these comparables in nature and characteristics to that of defendant’s lands is clear and convincing and leaves no doubt but that the highest and best use of the property herein sought is for industrial purposes. Further supporting this conclusion are the remaining 10 transactions of properties, 2 on the west side and 8 on the east side of the Mississippi River which involve tracts of land ranging in various sizes from 100 to 1400 acres at prices varying from $850 to $12,500 per acre encompassing an area along the Mississippi River from a point south of Addis, Louisiana (Copolymer) to a point south of Donaldsonville (Gulf Oil Corporation). See State Through Dept. of Highways v. Burden, La.App., 180 So.2d 784; State Dept. of Highways v. Carlina, La.App., 169 So.2d 265; Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6; Central La. Elec. Co. v. Harang, La.App., 131 So.2d 398; City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445; State v. Madden, 139 So.2d 21; Central La. Elec. Co. v. Mire, 140 So.2d 467, which proclaim the rule that the value of land expropriated must be the best and highest use to which the property may reasonably be put in the not too distant future and the owner thereof is entitled to compensation according to such reasonably potential use.
The trial judge held that the highest and best use of defendant’s land is for industrial purposes. He further concluded that that portion of defendant’s land over which the subject servitude will cross is of the value of $1,000 per acre. In his written reasons, he stated:
“The larger portion of the Gay property cannot be taken into consideration as to value with that portion of the back part of the Gay property over which the right of way traverses due to its size and location. The industrial use, as to said back portion, is due to the fact that Centennial Plantation fronts on Bayou Plaquemine which runs into the Intracoastal Canal and which is suitable for barge traffic.”
We concur as stated above both in the determination as to the best use of defendant’s land and to the value of $1,000 per acre assigned by the trial judge. The trial judge reasoned that the Centennial Plantation portion of defendant’s land which fronts on Bayou Plaquemine should not be given the same value per acre as that given to the St. Louis Plantation portion which contains substantial frontage on the Mississippi River. The property of defendant herein affected has only a 700 foot frontage on Bayou Plaquemine. While Bayou Plaquemine is no longer a part of the Intracoastal Canal because of the closing of the Plaquemine Locks it nevertheless has access to the new Intracoastal Canal which joins the Mississippi River a short distance to the north.
The trial judge further determined that plaintiff must pay defendant for 90% of the fee value of the land included in the servitude and rendered judgment in favor of defendant in the sum of $49,860.00, computed at 90% of 55.4 acs x $1,000.00. Plaintiff’s witness assigned a value of 50% and defendant’s witness 100% of fee value. Defendant will not be completely divested of all value of the land comprising the servitude though it will be severely restricted in the use thereof. The assignment of 90% by the trial judge is not manifest error. Defendant cites the recent unreported case of Gulf States Utilities Co. v. Moore et ah, La.App., 197 So.2d 106, our docket No. 6928,. wherein we approved the payment of 100% *33 of fee value for the servitude therein sought. However, there we were dealing with highly valuable residential property and it was clear to us there that residences could not be built under the proposed electric transmission lines. See also Gulf States Utilities Co. v. Heck et al., 191 So.2d 761, wherein we approved an award of 100% of fee value for a servitude of a tract having residential purposes. We have examined other authorities cited by plaintiff awarding considerably less than 90% of fee value for servitudes. These cases in our opinion are inapposite to the facts of this case because of the magnitude of the facilities herein proposed which we will hereinafter more fully describe.
AS TO SEVERANCE DAMAGES
The most strenuously argued feature of this case is the issue as to severance damages. Plaintiff contends that by virtue of the particular nature and characteristics of the subject property there are no severance damages. Defendant argues to the contrary and in support thereof relies on the testimony of its witnesses. Mr. Williams testified that defendant’s property was damaged to the extent of $179,530. He has adopted what may be referred to as a “strip” approach, designating two strips each measuring 100 feet in width and paralleling both sides of the right of way. He has assigned a damage of 65% of fee value, or $59,995 to the two interior strips which include 71 acres. He has assigned a damage value of 35% of fee value, or $33,101.25 to the two exterior strips which contain 72.75 acres. There is located to the rear of the Centennial Plantation wooded lands of the St. Louis Plantation comprising 1,314.2 acres, to which Mr. Williams has assigned a damage of 4% of fee value, or $65,710. To the balance of the Centennial Plantation over which the servitude crosses consisting of 418.45 acres, he has also assigned damages of 4% of fee value, or $20,922.50. These figures total $179,-728.75. Our figures differ slightly with those of Mr. Williams because he rounded off his figures to $850 and $450 damage per acre. The reasons given by Mr. Williams in assigning damages as aforestated is that because of the nature of the transmission lines the use of the property by industry will be affected according to the percentages he has assigned to each. He further stated that the 4% damages last referred to is the result of the general restrictions occasioned to an industry by virtue of the right of way which includes ingress and egress, inspections, repair, etc. While the general description of the type of electric transmission installation that will be erected on the servitude herein sought is more particularly described in the Ris-troph case, decided by us this date and above referred to, we wish to further note the magnitude of the facility we are here contemplating. The large steel towers will be erected approximately 1000 feet apart. They will ultimately support 15 transmission lines with each line weighing 9.6 pounds per foot or a total of 135,000 pounds of line between each tower.
The trial judge combined the two strips on each side of the right of way and determined that defendant was entitled to receive damages to the extent of 15% of $1,000 per acre. These two strips contain 143.75 acres. He therefore awarded for this item damages in the sum $21,562.50.
The trial judge did not concur in the testimony of Mr. Williams to the extent of the latter’s two items of assessment. Instead, the trial judge determined that 235 acres located on the 418.45 acres of the Centennial Plantation to the rear of and behind the proposed right of way would be damaged to the extent of 8% of fee value or the sum of $18,800 and that the front portion would suffer no damage.
For reasons stated hereinafter we do not find that the trial judge committed manifest error in arriving at the above damages.
Plaintiff contends most strongly that the application of the “strip” theory is in error and not supported by the testimony or the *34 jurisprudence and that the practical effect is damages on damages.
There have been numerous cases which have awarded as severance damages various percentages of fee value to the remaining acreage of tracts of land affected by the acquisition of servitudes. In Gulf States Utilities Co. v. Heck, supra, we approved a 10% assessment of damages to the remaining portion of defendant’s property. In the Heck case the “strip” approach was not used. We here cite the Heck case as a check against the approach used by defendant’s appraisers and the damages assessed by the trial judge. Assuming for the sake of argument that the figure of 10% is reasonable here as it was in the Heck case, we find the net result reached herein to be the same. Here we have a tract of land containing 418.45 acres that has been valued by the trial judge at $1,000 per acre or a total of $418,450, 10% of which would be $41,845. The trial judge awarded herein as severance damages the total sum of $40,362.50 divided as above shown. While the approach used in the instant case varies from the method used in the Heck case, the similarity of result fortifies the reasonableness of the trial judge’s decision.
While it might be argued that the Centennial Plantation is more severely damaged by the existence of the proposed power line because the same traverses the property at an angle, this in our opinion is offset by the fact that the front portion of defendant’s land is traversed by Louisiana Highway No. 75 (Bellview Road), which has the effect of severing it from Bayou Plaque-mine, and these factors compensate for / each other. v
The remaining issue is that portion of the trial judge’s decision which reserved unto defendant the right to seek further damages occasioned to growing crops, timber, and other property that may be caused by the installation and construction of the power line by plaintiff. For reasons stated in Louisiana Power & Light v. Ristroph, supra, decided by us this date, we herewith agree with the trial judge’s decision with respect thereto.
For the above and foregoing reasons the judgment of the district court is hereby affirmed at plaintiff’s costs.
Affirmed.