SAMUEL, Judge.
These three expropriation suits were consolidated for trial in the district court and for argument here. Plaintiff, an electric utility company with expropriating authority under the provisions of LSA-R.S. 19:2(9), owns an existing servitude or right of way, 100 feet in width, across defendants’ lands in the LaPlace area of St. John the Baptist Parish on which it has a 115-KV (115,000 volts) electric transmission line running between LaPlace and Sorrento as a link in its transmission system servicing St. John, St. James and Ascension Parishes. It filed these suits to obtain a right of way, also 100 feet in width, across a different portion of defendants’ lands, a servitude it alleges is necessary to relocate, reconstitute and maintain a segment of its lines. It also alleges the transmission will be increased from 115-KV to a double circuit 230-KV and the new servitude will be used instead of the existing one.
Defendants filed various exceptions (which the court referred to the merits) and answers to plaintiff’s petitions, attacking the constitutionality of the pertinent expropriating statute because of the manner in which it was administered in these cases and, alternatively, denying the rights of way sought were necessary for public purposes and seeking compensation in excess of that which plaintiff alleged was due.
After trial judgments were rendered in each of the three suits in favor of plaintiff and against the defendants, granting to plaintiff a right of way 100 feet in width across lands as described in each judgment, with the right of ingress and egress thereon, to vest upon the payment of the sum awarded in each judgment (we will discuss these amounts hereinafter) and upon rec-ordation of a cancellation, release and ex-tinguishment by plaintiff of its existing right of way across defendants’ lands to become effective immediately upon removal of all electric facilities from the existing *477 right of way but in no event more than six months from the date of. the finality of the judgments. In addition, the judgments reserved to defendants the right to claim any damages they may incur by reason of the existence of the present right of way prior to the removal of electric facilities.
The defendants have appealed. In this court they contend: (1) the expropriating statute, LSA-R.S. 19:14, is unconstitutional by reason of the manner in which it has been administered in these cases; alternatively, (2) plaintiff failed to make an offer in good faith as required by LSA-R.S. 19:2; (3) the relocation involved was motivated by private convenience rather than public need and necessity; and (4) the amounts awarded by the trial court are inadequate. Plaintiff also has appealed contending the trial court erred in not allowing a credit for its abandoned servi-tudes.
Defendants’ first contention, that the expropriation statute is unconstitutional by reason of the manner in which it has been administered, is based on the argument that the requirement of due process has not been met because they have not been accorded a proper opportunity to be heard and to defend. They point to the fact that in these cases the defendants, who include residents of Louisiana, a resident of Texas (through an attorney appointed to represent the absentee), the spouse of a living person, the spouse of a deceased person, and the unknown absent heirs of two deceased persons whose successions have never been opened (through an attorney appointed to represent such absent heirs) were cited to appear and file responsive pleadings, in accordance with the provisions of the statute, within 10 days under penalty of waiving their right to defend the taking and also were required to be prepared for trial within 33 days from the date on which the proceedings were filed. They argue that by virtue of these requirements their right of discovery and the right to file exceptions to clarify pleadings prior to answer have been eliminated and the elimination of such procedural devices has severely restricted the ability of the defendants to present a proper defense. Appellants do not contend the statute standing alone is unconstitutional because of the time element provisions it contains. They concede that constitutionality, but urge unconstitutionality as a result of an absence of due process because of the application of such time provisions to the particular factual situations present here.
LSA-R.S. 19:5, 19:6 and 19:7 are the statutory provisions referred to. These sections require that on the institution of an expropriation suit the trial court must issue an order fixing the time of trial, the defendants must be served with a certified copy of that order at least 20 days before the time fixed for the trial, their answers and service of copies thereof on the plaintiff must be filed and made within 10 days after service upon them of the notice of the time fixed for trial, and failure of the defendants to file their answers or serve copies thereof on the plaintiff within the 10-day period constitutes a waiver of all defenses except claims for compensation and damages.
Plaintiff’s petitions were filed on September 28, 1967 and an order fixing the trial for October 31, 1967 was signed by the district judge on the same date. The three cases were consolidated for trial shortly thereafter. The defendants filed exceptions, answers and interrogatories on October 12, 1967. Answers to the interrogatories were filed by the plaintiff on October 30, 1967 and on that date defendants filed a motion for a continuance. The motion was granted and the suits were continued to November 15 and 17, 1967. The trial lasted four days; it wa's held on November 15 and 17, 1967 and January 5 and 10, 1968. Judgments were rendered on February 12, 1968.
Assuming, but not deciding, that the otherwise constitutional time provisions of the statute could be rendered unconstitutional by their application in a particular *478 case, we do not find the facts in these cases are such as to bring them under that rule. In both argument and brief defendants have complained only in generalities. They have not pointed to any instance in which the time element or the absence of the usual procedural devices and delays have in fact deprived them of their ability to present a proper defense. To the contrary, the defense appears to us to have been fully presented. Under these circumstances we are of the opinion that their first contention is without merit.
Nor do we agree with defendants’ second contention, that the plaintiff cannot expropriate the properties because it failed to make an offer in good faith in that although plaintiff did offer the defendants particular sums of money for the servi-tudes, at no time did it offer any compensation other than what it considered was the value of the properties sought to be expropriated less that amount which plaintiff considered was the value of the existing servitudes which were to be abandoned. The contention is made on the basis of LSA-R.S. 19:2 which provides that the authorities therein mentioned may expropriate needed property “Where a price cannot be agreed upon with the owner * * * ” and the jurisprudence to the effect that a condemnor is required to conduct good faith, bona fide negotiations with the landowner before it can exercise the right of expropriation (see Calcasieu & Southern Ry. Co. v. Witte, 224 La. 1091, 71 So.2d 854; Southwest Louisiana Electric Mem. Corp. v. Simon, La.App., 207 So.2d 546).
The question of whether plaintiff has the right to receive a credit for the abandoned servitudes is before us in these cases on plaintiff’s appeal from the trial court judgments which denied such a credit. However, in Louisiana Power & Light Company v. Lasseigne, Jr., et al., La.App., (handed down March 3, 1969), a suit by the present plaintiff to expropriate land in the same area and for the same purpose as here, which case was argued by the same counsel appearing in these cases, the trial court judgment offset the value of the new right of way by the value of the release and extinguishment of the old or existing right of way. That trial court judgment was rendered prior to the final negotiations of which the present defendants complain. Plaintiff therefore had reason to believe it was entitled to the credit. As we are satisfied that the offers made by the plaintiff were based on the appraisals of their experts, we cannot say they were not made in good faith simply because the values of the existing servitudes were deducted therefrom in view of the fact that the same district court, although through a different judge, previously had allowed such a credit.
In connection with their third contention, that the relocation of the lines was motivated by private convenience rather than public need and necessity, defendants do not deny there is a growing need for electrical power in the area involved, that existing facilities are becoming obsolete and a larger line on modern steel towers rather than the existing wooden poles is needed for the foreseeable future, that the new line design (not its location) properly was motivated by the anticipated need for greater capacity and higher voltage, and that the line is being constructed in segments with some other segments now completed. We are satisfied that plaintiff has proved public need and necessity in its usual connotations and defendants have offered no evidence to the contrary.
However, defendants argue that the relocation of the segment here involved was accomplished solely as a convenience or accommodation to Gulf State Land & Industries, Inc., the owner and developer of two large tracts of land in the area known as LaPlace and Belle Point Plantations, for the private profit and gain of Gulf States. As shown by documents and correspondence which the defendants caused to be put in evidence, there was an agreement between plaintiff and Gulf States under which the latter undertook the task of acquiring some rights of way for plaintiff *479 and agreed to pay some of the expenses involved. With regard to this agreement plaintiff argues it only accelerated the segment in question at the request of Gulf States and that it did not, by location or otherwise, either plan the reconstruction or reconstruct for the accommodation or benefit of Gulf States.
On this question the trial court concluded that plaintiff had not misused or abused its statutory right to expropriate by its dealings with Gulf States. We considered the identical question in Louisiana Power & Light Company v. Lasseigne, Jr., et al., supra. The property involved in that case is close to the west side of Gulf States’ LaPlace Plantation while the properties here involved are close to the east side of the same plantation. In view of our discussion of the same question in the cited case we find further discussion unnecessary here. We agree with the conclusion of the trial judge.
We now address ourselves to plaintiff’s appeal and its contention that the trial court erred in not allowing a credit for its abandoned servitudes. We do not agree with the contention.
It is quite clear that under the circumstances here involved plaintiff cannot obtain two servitudes over the same properties for the same purpose. It could not obtain the new servitudes if it retained the old ones without being required to abandon the latter after completion of construction of the former; the new are to be used instead of, and not in addition to, the old; and without ultimate abandonment of the old there would be no public need and necessity for, and therefore no right to expropriate, the new. As the land upon which the servitudes are exercised never ceased to belong to the defendants and the plaintiff never acquired anything more than the right of using the servitudes (LSA-C.C. Art. 658), plaintiff is giving up nothing in actual fact. It is not entitled to a credit for the abandonment of the old servitudes any more than it would be entitled to payment for such abandonment if the new servitudes were sought and obtained over lands other than those belonging to the present defendants. For this reason, and for the reasons contained in the previously cited case of Louisiana Power & Light Company v. Lasseigne, Jr., et al., supra (again this same question was considered at length and disposed of in the cited case), we are of the opinion that plaintiff is not entitled to a credit for its .abandoned servitudes.
We now address ourselves to the final question presented for our determination, defendants’ contention that the awards are inadequate. The properties here involved are on the north side of U.S. Highway 61 (Airline Highway), approximately 4/io of a mile west of the intersection of U.S. Highways 61 and 51 (Hammond Road), in Sections 26 and/or 65, Township 11 South, Range 7 East of St. John the Baptist Parish and near the Town of LaPlace, Louisiana. They measure each approximately 11,600 feet in depth from the Airline Highway and widen to the rear. The Peter Brady, Yvonne Brady and Lasseigne tracts, respectively, have frontages of 119.-96, 119.95 and 296.4 feet on the Airline Highway. The south boundaries of the servitudes herein expropriated are 636 feet north of the Airline Highway on the Peter Brady tract, 714 feet north of that highway on the Yvonne Brady tract, and 1100 feet north of that highway on the Las-seigne tract. The area encompassed in each of those servitudes is .362 acres on the Peter Brady tract, .367 on the Yvonne Brady tract, and .364 acres on the Las-seigne tract.
Two expert appraisers, Mr. Max Derbes and Mr. Bradley Oubre, testified on behalf of the plaintiff and two such appraisers, Mr. Louis Herbert and Mr. Kermit Williams, testified on behalf of the defendants. All of the appraisers personally inspected the properties and used the comparable sales approach. All of them agreed that the front portions, i. e., those portions closest to the . highway, were more valuable *480 than the rear, but each differed as to the depths to which that value should extend. Mr. Williams predicated his valuations on an overall price per acre without distinction between uses.
Mr. Derbes was of the opinion that the highest and best use of the front of the properties to 500 feet from the highway was “limited commercial” and the next 1,000 feet was agricultural. He valued the first 1,000 feet at $5,000 an acre and the second 1,000 feet at $2,000 an acre. Mr. Oubre considered the first 450 feet from the highway as commercial and valued it at $20,000 per acre; he classified the remainder as residential with a value of $1,-650 per acre. Mr. Herbert considered the front 1,000 feet as commercial with a value of $20,000 per acre and the remainder as residential with a value of $6,400 per acre. As we have said, Mr. Williams predicated his valuations on an overall price per acre without distinction between highest and best use for portions of the lands. While he was of the opinion that the property within 800 to 1,000 feet of the highway should be considered commercial, he felt the properties had an average value of $13,550 per acre.
In reaching their conclusions all of the appraisers considered damages to the land within the servitudes. Messrs. Oubre, Herbert and Williams felt those damages were 100% of the fee value. Mr. Derbes used 50% of fee value. All of the experts likewise recognized that severance and/or consequential damages were due. Mr. Oubre felt these damages were nullified by the abandonment of the existing servitudes. In Mr. Derbes’ opinion the only damages involved would be included in an award of 100% of fee value for a small triangular portion consisting of .258 acres between the expropriated servitude and a pipeline on the Lasseigne tract, which at his figure of $2,000 per acre would amount to $516. In Mr. Herbert’s opinion severance and consequential damages amounted to $1,984 on the Peter Brady tract, $1,696 on the Yvonne Brady tract and $3,369 on the Las-seigne tract. Mr. Williams felt that such damages amounted to $8,015 on the Brady tracts and $1,559 on the Lasseigne tract.
The trial court did not completely accept the opinions of, any one of the experts. He accorded greater weight to the opinions of Messrs. Derbes and Oubre because he felt they were more familiar with local property values and conditions. He disagreed with a basic factor underlying Mr. Williams’ appraisals, the conclusion that industrial surges such as are found in the City of Baton Rouge were in the offing in the vicinity involved, as being too speculative. He considered Mr. Derbes’ method of arriving at values to be the most reliable and realistic approach, but believed that appraiser’s evaluations too low in the light of Mr. Oubre’s opinion and in the face of two recent and pertinent sales in the area. Accordingly, he reached the conclusion that the first or front 1,000 feet had a value of $8,000 an acre while the second 1,000 feet had a value of $5,000 an acre. On this basis the trial court made the following awards:
1. Peter Brady tract' — -value of proposed right of way .362 acre at $8,000 per acre in fee, less 25% residual use to owner in view of the intensity of the electric power contemplated to be transmitted over the property and in lieu of awarding severance damages immediately along the sides of the right of way.
.362 acre x $8,000=$2,896 less 25% or $2,896 minus $724=$2,172 net for right of way.
2. Yvonne Brady tract (which he considered as tracts 5 and 6 so that the total award for this tract was $2,467.20) — Tract 5 — .146 acre at $8,000 per acre in fee, less 25% residual use to owner for like reasons and authority cited for Peter Brady tract, above.
.146 acre x $8,000=$1,168 less 25% or $1,168 minus $292=$876.
*481 Tract 6 — .221 acre at $8,000 per acre if fee, less 10% residual use to owner in view of intensity of the electric power contemplated to be transmitted over the subject property, and in lieu of awarding severance damages immediately along the sides of the right of way.
.221 acre x $8,000=$1,768 less 10% or $1,768 minus $176.80=$1,591.20 net.
3. Lasseigne tract — (a total of $3,020.-00) — Severance damage to triangular remainder between Shell Oil Co. pipeline and proposed right of way including .25 acre at $5,000 per acre or $1,290.
.346 x $5,000=$1,730 full fee value.
We agree with all of the trial court’s conclusions except those having reference to the value of the servitudes and damages. Our more recent jurisprudence involving the question of value of a servitude for high voltage electric transmission lines on modern steel towers, which are the facts here, sets the same at 90% or 100% of the fee value of the land. See Louisiana Power & Light Company v. Edward J. Gay P. & Mfg. Co., La.App., 200 So.2d 29; Louisiana Power & Light Company v. Dekle, La.App., 200 So.2d 26; Louisiana Power & Light Company v. Ristroph, La.App., 200 So.2d 14; Gulf States Utilities Company v. Moore, La.App., 197 So.2d 100; Gulf Staes Utilities Company v. Wright, La.App., 195 So.2d 663; Gulf States Utilities Company v. Heck, La.App., 191 So.2d 761. In view of this jurisprudence, and of the testimony of the four appraisers who appeared as witnesses, we are of the opinion that the servitudes over the Peter and Yvonne Brady tracts have a value of 90% of the value of the land within the servitudes. Because of this conclusion it follows that the trial court awards of 75% and 90% of fee value for those tracts cannot include, or be in lieu of, awards for severance or consequential damages and the damages awarded for the Lasseigne tract are insufficient. Nor can there be any question about the fact that severance and consequential damages are due. The trial court and all of the expert witnesses recognized that fact, although Mr. Derbes was of the opinion that such damages, in the amount of $516, were applicable only to a small triangular portion on the Las-seigne tract and, while Mr. Oubre was satisfied such damages were due, he felt the same were nullified by the abandonment of the existing servitudes and gave no figures as to damages.
After thoroughly considering all of the evidence pertinent to the question, we have decided to accept Mr. Herbert’s opinion, but not his ultimate conclusions as to amounts, relative to severance and consequential damages. In his opinion such damages amounted to $1,984 on the Peter Brady tract, $1,696 on the Yvonne Brady tract and $3,369 on the Lasseigne tract. However, as his figures are based on land values of $20,000 per acre for the Brady tracts and $6,400 per acre for the Las-seigne tract in the areas of the taking and as the trial judge concluded the proper values were, respectively, $8,000 and $5,000 per acre, conclusions with which we agree, Mr. Herbert’s figures will be reduced accordingly.
Consequently, we will increase the trial court awards to the following extents: (1) Peter Brady tract — $434.40 for the servitude and $793.60 for damages, or a total of $1,228; (2) Yvonne Brady tract — $175.20 for the servitude and $678.40 for damages, or a total of $853.60; and (3) Lasseigne tract — $1,342.03 for damages.
For the reasons assigned, the judgments appealed from are amended only to the extent of increasing the amounts awarded to the defendants as follows: in Louisiana Power & Light Company v. Peter J. Brady, et al., No. 3,227 of our docket, from the sum of $2,172.00 to the sum of $3,400.00; in Louisiana Power & Light Company v. Miss Yvonne Brady, et al., No. 3,226 of our docket, from the sum of $2,467.20 to the sum of $3,320.80; and in *482 Louisiana Power & Light Company v. George A. Lasseigne, et al., No. 3,225 of our docket, from the sum of $3,020.00 to the sum of $4,362.03. As thus amended, and in all other respects, the judgments appealed from are affirmed; all costs in this court to be paid by the plaintiff.
Amended and affirmed.