LOTTINGER, Judge.
This and the consolidated suit entitled Transcontinental Gas Pipe Line Corporation v. Sobert, La.App., 116 So.2d 892, No. 13,396 of the docket of the Lower Court, are expropriation proceedings instituted by plaintiff against adjoining landowners in the Parish of Lafourche. In each suit the trial judge ordered the expropriation upon the payment of stated compensation for the servitudes and damages to the property and the defendants have appealed. Plaintiff neither appealed nor answered the appeals.
The sole question presented both in the Lower Court and here is that of quantum. The record reflects that the two tracts involved are situated at about 1J4 miles below the City of Thibodaux on the left descending bank of Bayou Lafourche and measures together l'1/á arpents, more or less, front on Bayou Lafourche by a depth of 80 arpents. Each suit seeks a servitude or right of way 50 feet in width for 'a. 10 inch gas pipeline which would traverse the properties at a distance of about 2,000 feet from the public highway which runs parallel to Bayou Lafourche.
The trial judge found that the highest use of defendant’s property was for pasture land of a full fee value of $500 an acre. He found no severance damages and concluded that the quantum should be set at one-half of the fee value. Accordingly, as 0.4 acres were involved in this suit he awarded defendant the amount of $100. In the companion suit 0.2 acres were involved and judgment was rendered in the amount of $50.
Mr. Max J. Derbes, realtor, testified on behalf of plaintiff. The pertinent part of his testimony on direct examination is as follows:
“Q. Mr. Derbes, at the request of plaintiff, have you made an appraisal of the right-of-way plaintiff seeks, first across the lands owned by Mrs. Bourgeois? A. Yes, sir, I have.'
“Q. Did you personally go upon the land and * * *. A. Yes, sir, I did.
“Q. Will you describe the location of the land? The type of land, and how you arrived at your appraisal ? A. The Bourgeois tract is a mile and a half below the Town of Thibodaux on the left descending bank of Bayou Lafourche. The pipe line is crossing this land from east to west at a point 2,019 feet and 2,063 feet north of Bayou Lafourche; and the pipe line measures 308 feet from east to west. The land at that point is pasture land. I have a photograph taken by me of the Sobert and Bourgeois tracts, which are adjoining, taken from a shell road on the Zenon Bourgeois tract immediately to the west.
“Q. While we’re at it, does that picture also show the Sobert tract? A- Yes, sir, it does. ;
*890 “Q. That offering will serve to describe both tracts that are in question? A. That’s right. They’re identical properties at that point.
“Q. Continue your testimony, your appraisal. A. The best evidence of value in both were comparable sales in the area; sale of February 5th, 1958, Book 232, Folio 167, by Marcelin Braud Guidry, et al to Joseph E. Blanchard, Jr. and Mrs. Myra Robicheaux Blanchard, of a tract of land on the left descending bank of Bayou La-fourche, five miles below Thibodaux, 212 feet on Bayou Lafourche by depth of 8,640, side lines only as they recede, measuring in the rear 318 feet in width, containing 52.56 acres, sold for $15,-000.00, which is on the basis of $285.38 an acre. This property is cleared land, and is bounded on its lower east side by the lands of the St. Charles Roman Catholic Church. Sale on June 4th, 1958, c.O.B. Folio 585. Sale by Mrs. Clarice Saucier Pitre Theriot, et al to Dr. Paul T. Rayo, tract of land on the right descending bank of Bayou La-fourche, about five and a half miles below Thibodaux, containing 33.85 acres, measuring 192 feet front on Bayou Lafourche and on Highway No. 1, by a depth of 7,680 feet, sold for $22,000.00. This included a frame plantation house in very good condition and a smaller three room house. Both houses were in good condition. The improvements have a minimum value of $3,500.00, which deducted from the gross price of $22,000.00, leaves a price of $18,500.00, which is on the basis of $546.52 an acre. Sale on September 11, 1958, C.O.B. 240, Folio 216. Sale by Raoul Degruisse to David J. Trosclair, tract of land on the right descending bank of Bayou Lafourche, seven and a half miles below Thibodaux. This tract contains 26.45 acres and measures 120 feet front on Bayou Lafourche and on Highway 1, 180 feet in width in the rear by a depth of 7,680 feet between expanding lines; sold for $9,000.00, on the basis of $340.26 per acre. Now those three sales were all in 1958, and as the property on the right descending bank of the Bayou has a higher value in my opinion than the property on the left descending bank of the Bayou, I valued the subject property at $400.00 an acre I valued it, which is $115.00 more than a sale in 1958 on the same side of the Bayou four miles east from subject property, figuring that the increment in value is due to its nearness or it being closer to Thibodaux than the sale at $285.00 an acre. Then the other sales on the right bank of the Bayou at $546.00 an acre and at $340.00 an acre again, in my opinion, reflect the value of $400.00 an acre for the property on the left descending bank of the Bayou. Now the land on the right-of-way on the Bourgeois tract being 2,000 feet back from the Bayou, I gave it the same price as the overall value of the entire tract in an effort to be liberal. The right-of-way contains 15,400 square feet, or 0.35 acres. Inasmuch as the owner will retain fee title to all of his land, the continuity of the ownership will not be disturbed; he will retain all mineral rights to his land; and he can continue to use all of his land for pasture land or farm land; the pipe line will be laid below plow depth, he certainly retains more than 35% of the fee value of the land. However, I’m allowing him 50% of the fee value of the land, or $200.00 per acre, which gives the 0.35 acres in the right-of-way. This is for a 50-foot right-of-way that my valuation is based on a value of $70.00. Now as the line will pass through pasture land, and it’s not planted, or was not planted on the date of my inspection, the owner can continue to use this land. He’ll only be interrupted in its use for a period *891 of a few days while they’re actually laying line. I found no consequential or severance damage to the property.
“Q. I believe you stated, but will you restate what you consider the highest and best use of the property? A. As farm or pasture land, as it is now being used.”
On cross examination this witness testified in part as follows:
“Q. And I understand that your testimony is that best use to which this property could be put is for pasture or farm land? A. For pasture or farm land.
“Q. And that is despite the fact that it’s located directly across the Bayou from a state college? A. That’s correct, sir.
“Q. As a qualified and respected realtor, you would not say that this is located ideally for a subdivision? A. No, sir, I wouldn’t say it was. It could be subdivided, but there’s too much other competitive land in the area that can be subdivided that whereas it’s across the Bayou from the college, it would still be 3 miles from the college, because you’d have to come up to a bridge to get to it.
“Q. As a qualified realtor, you would not be interested in buying that property for subdivision purposes? A. No, sir, not as a realtor, no, sir, or as speculator would I be interested in buying it for a subdivision.
“Q. What would you establish its value for subdivision purposes? A. I wouldn’t give it any value as subdivision purposes, because I don’t think it’s subdivision land. I don’t think the need for it, the demand would justify putting a subdivision in that area.
“Q. You stated that because of the accessibility of other properties in that area for that purpose that it has no value for subdivision purposes. Would you name me the properties which are available for that purpose in that area ? A. Well, there’s a mile and half between Thibodaux and that property, and then you can go down another mile and find another mile of property which would be just as close to the college by matter of a half mile or a mile. It doesn’t matter today whether you’re a half mile one ay or other.”
Mr. Leonard J. Toups, realtor of Thibo-daux, testified on behalf of defendants. He testified in part as follows:
“Q. Mr. Toups, as a qualified realtor residing in Thibodaux, what in your opinion is the best use and highest use to which the property with which we’re concerned can be put? A. The best use would be that of a subdivision. Now the reason why I say that is that I been trying to get hold of property in that area, and the particular property that I have had negotiations about was the property of Latin-odese Toups, presently owned by his daughters, Miss Lucille Toups and her sisters.
“Q. Is that in the immediate vicinity, proximity of this property? A. That is 600 feet south of the Sobert and Bourgeois properties.
“Q. Below? A. Below; I mean that’s right, below, and the trouble in that area is price. All of that property is being held for subdivision purposes.”
When asked his opinion as to the value per acre of the property this witness answered :
“A. On these properties, the Bourgeois and the Sobert tracts, a wholesale value on that, going. back 2,000 feet from the Bayou, at $5,000.00 per acre.”
Counsel for appellants admit in their brief that this witness testified that no *892 severance damages would result from the laying of the gas line and that they are bound by this testimony.
Mr. Emmett M. Glynn, another Thibo-daux realtor, testified on behalf of defendants and, like Mr. Toups, stated that the property in question was subdivision property and worth $5,000 per acre.
The record makes it clear that the property with which we are involved is on the opposite side of Bayou Lafourche from the greater part of the City of Thibodaux and, further, that there are no subdivisions lying between the city limits of Thibodaux on that side of the Bayou and the subject property.
As we understand the testimony of defendants’ witnesses, they were impressed in particular by two things, namely: 1) the scarcity of subdivision property in the area and 2) a plat (introduced into evidence as D-9) of the subject property labeled “College Acres Sub-division” and showing the property as being subdivided into a number of lots.
We cannot help being doubtful as to the scarcity of subdivision property in the area for the simple reason that the record reflects a sheriff’s sale dated March 23, 1957 (growing out of a partition suit) of a 35 acre tract of land with improvements only one-half mile below the subject property for $15,000 or an average of $430 per acre.
Nor are we impressed by the plat marked D-9. All witnesses who testified with respect to it admitted that it had been drawn for purposes of the suit and there is no positive evidence whatever that the property would actually be subdivided and sold as lots, or, if so, when.
In Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6, the Supreme Court held that while in expropriation proceedings the availability of property for residential subdivision purposes can be taken into consideration in fixing its market value, it should appear that such development should take place in the not too far distant future. This, we do not believe, is borne out by the record here.
The award of the trial judge strikes us. as being fair and adequate and will not,, therefore, be disturbed.
For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.