TUCKER, Judge.
In these two suits which have been consolidated plaintiff Florida Gas Transmission Company, a corporation organized, chartered, and existing under the laws of the state of Delaware, authorized to do business in Louisiana, and recognized as a natural gas company as defined by the provisions of Title 15, U.S.C.A., sec. 717(a)(b), seeks to expropriate a servitude in two adjoining tracts of land owned respectively by defendants in these two suits, and described as follows:
Section 10 of Township 9 South, Range 11 East, Southeast District of Louisiana West of the Mississippi River in Iber-ville Parish, containing 166.59 acres, and Section 11 of Township 9 South, Range 11 East, Southeast District of Louisiana West of the Mississippi River in Iberville Parish, containing 164.06 acres.
Having negotiated with defendants in good faith for the acquisition of a conventional right of way and servitude, but having failed to agree upon the compensation to be paid therefor, and being the holder of a certificate of public convenience and necessity issued by the Federal Power Commission to construct an additional pipeline which will become part of plaintiff’s natural gas transmission system, plaintiff instituted these proceedings by virtue of the authority of U.S.C.A. Title 15, sec. 717f(h) and L.R.S. 19:2(7) to acquire by expropriation the necessary right of way and servitude over defendants’ lands as described above.
The land involved in these two suits, totaling approximately 330 acres, is located west of the Intracoastal Canal on the westerly side of Bayou Grosse Tete, in a rural and largely undeveloped portion of Iber-ville Parish. Each of the adjoining tracts is relatively long and narrow and fronts on Bayou Grosse Tete. The tracts are already severed by Louisiana Highway 77, a blacktopped road which runs along the Bayou. Each tract is severed, also, by a 170 feet Gulf States Utilities Company servitude, about one-half mile from Bayou Grosse Tete, which servitude contains enormous 100 to 120 feet high steel towers carrying wires charged with more than 500,000 volts of electricity. Plaintiff is seeking the servitude herein for the purpose of constructing an eight-inch natural gas pipeline to carry gas from producing *710 wells owned by Dow Chemical Company located in Iberville Parish and to connect with plaintiff’s existing system. The pipeline proposed also will supply natural gas to the Iberville Parish Police Jury for its natural gas system. The proposed pipeline is to be placed 30 inches beneath the surface and will be constructed entirely within the existing 170 feet wide Gulf States Utilities servitude, although the 30 feet permanent servitude will include a five feet strip outside the power line right of way.
No serious questions regarding plaintiff’s right to expropriate the property here involved was raised in the trial court, nor any questions regarding the public necessity and the purpose of the pipeline. The trial judge granted the servitudes as prayed for; found the highest and best use of the property involved to be industrial and fixed compensation at Two Hundred Thirty-nine and no/100 ($239.00) Dollars for the servitude in each suit. He awarded Thirty-six and no/100 ($36.00) Dollars for the temporary construction servitude granted in each suit, and also severance damages at the rate of Fifty-six and no/100 ($56.00) Dollars per acre for the entire acreage of the two tracts.
Plaintiff has paid the total amount fixed by the trial judge in each case and has appealed alleging that the trial judge erred in holding that the highest and best use of each tract is industrial; in awarding severance damages; and in disregarding the testimony of plaintiff’s witnesses regarding severance damages. Defendants have answered plaintiff’s appeal in each case praying for an increase in judgment.
Plaintiff’s witness, Chester A. Driggers, set the value of the land taken for the servitude at One Hundred Eighty-five and no/100 ($185.00) Dollars; while his other witness, Mr. Oren Russell, set it at Fifty Dollars and no/100 ($50.00) Dollars. Both of plaintiff’s witnesses found the highest and best use of the property involved to be agricultural, and neither found any severance damage. Defendants' witnesses Kermit Williams and C. C. Book, set the value of the servitude respectively at Four Hundred Five and no/100 ($405.-00) Dollars and Three Hundred Forty and no/100 ($340.00) Dollars based upon a finding of the highest and best use of the tracts to be industrial.
During the course of the trial considerable time and effort was devoted to the problem of determining which category, agricultural or industrial, represented the classification for which the property was best suited. The trial judge did not favor us with written or oral reasons for judgment, and we can only surmise the bases for his finding that the highest and best use of the two subject tracts is industrial. We are of the opinion that the preponderance of the evidence presented establishes the highest and best use of the land involved to be agricultural. The land is now being used for agricultural pursuits. Percentage-wise about 55% of the land is cleared and approximately 45:% is densely wooded. There is no industrial, residential or commercial development of any kind in the immediate vicinity of these tracts. Plaquemine, the parish seat of Iberville Parish, is about 10 miles away by road, and the town of Grosse Tete lies about 12 miles to the northwest. No substantial question has been raised on appeal about the value of the servitude taken.
In his finding that the subject tracts bore an industrial character, the trial judge probably relied on the holding in the case of Gulf States Utilities v. Heck, 191 So.2d 761 (La.App. 1st Cir. 1966). In the cited case the Heck property which is contiguous to the tracts involved here was adjudged to have a reasonably foreseeable industrial character. The Heck property, as distinguished from the Dupont property herein, fronts on the Intracoastal Canal, while the tracts involved in this case do not abut thereon. It has been six and one-half years since the Heck property was determined to be industrial. However, there has been absolutely no industrial development of any kind on it, nor is any such development contemplated according *711 to the record here. There is no evidence of persons or entities interested in purchasing the tracts for industrial purposes, and any potential which these Dupont tracts may have for industrial use is so highly speculative as to be unreliable for such a finding in the instant proceedings. See Shell Pipe Line Corp. v. Lone Star Estates, Inc., 127 So.2d 745 (La.App. 4th Cir. 1961) and Transcontinental Gas Pipeline Corp. v. Bourgeois, 116 So.2d 888 (La.App. 1st Cir. 1959).
Defendants’ appraisers were unconvincing in their composite opinion that the subject tracts had an industrial usefulness, especially for marine activities, because the property was readily accessible to navigable waters. The record reflects, however, that there was considerable conflict between the expert witnesses with respect to the accessibility of the properties to barge traffic. It is true that Bayou Grosse Tete intersects the Intracoastal Canal at a point south of these tracts, but any marine industrial development would be inhibited by the presence of La. Rte. No. 77 which parallels Bayou Grosse Tete and separates the bayou from the subject tracts. There are also grave questions raised about the navigability of Bayou Gross Tete, and the acute angle at which the said bayou intersects the Intracoastal Canal with the latter condition posing serious problems with respect to maneuvering barges from one waterway to the other.
However, our determination, that the evidence predominantly supports the conclusion that the highest and best use of the subject property is agricultural in nature, is not of prime import in the resolution of the main issue here. Whether the two tracts bear an agricultural or industrial character, we find that the evidence does not support severance damages to the remainders of the properties. We are unable to perceive any substantial dispute between the parties litigant with respect to the value of the property over which the servi-tudes will traverse.
Plaintiff’s appraisers and James J. Hindman, expert engineer called by plaintiff, are in complete agreement that the pipeline, buried 30 inches wholly within the existing Gulf States Utilities servitude, will not cause any severance damages. Severance damages must be based upon a reduction in the market value to the remainder of the property. The market value, in turn, is based substantially upon the functional utility of the property. When an expropriation will not interfere with the development of the land or its reasonably prospective use, no severance damages are allowed. See State through Department of Highways v. Talbot, 200 So.2d 97 (La.App. 1st Cir. 1967), writ refused 251 La. 49, 202 So.2d 658 (1967); Louisiana Power & Light Co. v. United Lands Co., 218 So.2d 905 (La.App. 1st Cir. 1968), affirmed 254 La. 885, 228 So.2d 140 (1969).
Plaintiff’s appraisers and Mr. Hindman, in support of their position that severance damages are not occasioned to the remainder by the taking, point to the fact that the pipeline under the granted servitudes will be constructed nearly one-half mile to the west of that portion of the property fronting on Bayou Grosse Tete. Mr. Hindman further testified that the six or seven marine type businesses to which defendants’ appraiser Kermit Williams alluded could all be built and placed within the area of the subject land lying between the bayou and the Gulf States Power line. The great weight of the expert testimony clearly indicates that the pipeline would not interfere with any industrial utilization of the remainder which might be proposed, projected and recommended by the defendants’ appraisers, including marine type businesses.
Mr. Hindman, well qualified in the field of industrial complexes, positively stated that the natural gas servitudes would pose no problem in the event a person or corporation should become interested at a later date in constructing an industrial park complex on the site of the two tracts. There was further testimony that contrary *712 to the natural gas pipeline having a depressive influence on the remaining property-value, it was more likely that the two tracts would experience an enhanced value in such an event, since factories and installations of an industrial nature have need of some type of fuel, and the natural gas pipeline already in place on the property would afford an industry a ready-made source of fuel supply.
Mr. Book, defendant appraiser, simply was unable to support his opinion that the advent of the natural gas pipeline would result in an additional reduction of the acreage value located near the pipeline, when the massive electrical lines, supported by the enormous steel towers, were already in place on Gulf States Utilities 170 feet right of way. In the same vein Mr. Williams unsupportedly opined that the densely wooded area, as much as one mile removed from the pipeline, would be reduced in value to the extent of $150.00 per acre. The above references and other portions of their record testimony convince us that the opinions of Messrs. Williams and Book concerning severance damages lack logic and cogency and are not based on sound reasoning.
Mr. Russell, plaintiff’s appraiser, referring to comparables in evidence, uncon-tradictedly pointed to the fact that the two Chotin sales, with pipelines going across the middle of both pieces brought the same unit price as a third Chotin sale with the pipeline on the rear portion of this latter piece.
Although severance damages have been awarded where there was a second taking as in the case of Humble Pipe Line Co. v. William T. Burton Industries, Inc., 205 So.2d 724 (La.App. 1st Cir. 1968) in the instant case the pipeline will be constructed entirely within the pre-existing Gulf States servitude, with the only additional taking of land being the five feet extension beyond and to the west of the Gulf States right of way. It will be sufficiently buried in the earth than any foreseeable activities, be they agricultural or industrial, can be conducted on the property without noticeable interference from the pipeline. The opinions of the defendants’ appraisers, that the remainders of the two tracts will experience severance damages on account of the pipeline, amount to conjecture, and are not supported by reason, logic or soundness. The defendants were unable to show a single instance of a reduction in a sale price for comparable land where a pipeline had been laid.
As was stated in the case of State of Louisiana, through the Department of Highways v. Hunt, 219 So.2d 602 (La.App. 1st Cir. 1968) the burden of proving severance damages as a result of expropriation rests upon the land owners, and severance damages are never presumed but must be established by the owner who must prove by competent evidence that the land remaining has been diminished in value as a result of the taking. The defendants have failed to discharge the burdens incumbent upon them.
As the record fails to reveal any basis for the award of severance damages, in our opinion the lower court committed manifest error in granting such damages.
JUDGMENT IN NO. 8841
Accordingly, the judgment of the trial court in our Docket No. 8841 is reversed insofar as it awarded severance damages to the defendant-appellee; in all other respects the judgment is affirmed; defendant-appellee shall pay the cost of this appeal, the plaintiffs appellant shall pay the costs of the lower court.
Judgment reversed in part; affirmed in part and rendered.
JUDGMENT IN NO. 8842
For the reasons assigned in our Docket No. 8841 the judgment of the trial court is reversed insofar as it awarded severance damages to the def endants-appellees; in all other respects the judgment is affirmed; defendants-appellees shall pay the costs of this appeal.
Judgment reversed in part; affirmed in part and rendered.